06-4315-pr
Redd v. Wright

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2008
(Argued: April 6, 2009                 Decided: March 9, 2010)
Docket No. 06-4315-pr

--------------------------------------------------------x

Kevin Redd,

           Plaintiff-Appellant,

                -- v. --

Lester Wright, Chief Medical Director for the NYS Dept. of
Correctional Service, Hans Walker, Superintendent, C. Coynel,
Nurse Administrator, John W. Burge, Superintendent,

           Defendants-Appellees.

--------------------------------------------------------x

B e f o r e :  WALKER, LEVAL, HALL, Circuit Judges.

Appeal from the summary judgment dismissal of plaintiff-appellant's claims against employees of the New York State Department of Corrections, alleging violations of the First, Eighth, and Fourteenth Amendments, as well as the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc, based on his confinement in tuberculosis hold following his refusal to submit to tuberculosis testing. We AFFIRM on the basis of the doctrine of qualified immunity the district court's dismissal of plaintiff's claims. We further AFFIRM the district court's denial of leave to amend to add an as

1

applied Eighth Amendment claim.

AFFIRMED.

MATTHEW J. FEDOR (David F. Abernathy, Andrea L. D'Ambra, on the brief), Drinker, Biddle & Reath LLP, Philadelphia, PA, for Appellant.

MARTIN A. HOTVET, Assistant Solicitor General (Barbara D. Underwood, Andrew D. Bing, Julie S. Mereson, on the brief), for Andrew M. Cuomo, Attorney General of the State of New York, Albany, N.Y., for Defendants-Appellees.

JOHN M. WALKER, JR., Circuit Judge:

The plaintiff-appellant Kevin Redd appeals from a grant of summary judgment to the defendants-appellees, employees of the New York Department of Correctional Services (DOCS), by the United States District Court for the Northern District of New York (Magnuson, Judge). Pursuant to 42 U.S.C. § 1983, Redd claimed violations of the First, Eighth, and Fourteenth Amendments, as well as the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc, arising out of his confinement by DOCS under a tuberculosis ("TB") hold policy. The district court held that his First Amendment and RLUIPA claims were precluded by the qualified immunity doctrine and that his Eighth and Fourteenth Amendment claims failed as a matter of law. This appeal challenges all of those holdings and the denial of his motion to

2

amend the complaint to add an as applied Eighth Amendment claim.

**BACKGROUND**

DOCS administers "purified protein derivative" ("PPD") tests routinely to all inmates to detect "latent" TB infections. Under the policy that DOCS established in 1996 that is relevant to this appeal, if an inmate refused the PPD test, the inmate first was counseled about the importance of the test, and then, if the inmate persisted in his refusal, he was placed in TB hold, resulting in "keeplock status" in his cell. The inmate was then offered the PPD test daily for one week, weekly for one month and monthly thereafter. An inmate refusing these offers was kept in TB hold for one year during which three chest x-rays were taken at the beginning, middle, and end of the year. After one year and three negative chest x-rays, the inmate could be released into the general population, and thereafter would be evaluated each year by physical examination.

Under the 1996 Policy, inmates in keeplock status under TB hold were permitted one hour of exercise per day and three showers per week. Although not allowed telephone use or personal visits, they were permitted legal visits. Thus, the inmates' contact with other inmates and correctional personnel was limited, which, according to DOCS, "reduce[d] the possibility of the spread of [active TB]." Wright Decl. at 3, ¶ 7. Inmates in

3

TB hold were not placed in respiratory isolation, however; they remained part of the general prison population, though confined to their cells. Inmates who submitted to a PPD test were immediately released from TB hold, and those who tested positive for latent TB were neither required to undergo annual chest x-rays nor subjected to repeat PPD testing.

On April 9, 2001, DOCS placed Redd, an inmate at the Auburn Correctional Facility, in TB hold after he refused to undergo a PPD test on religious grounds. The 1996 Policy, unlike the current policy adopted in 2004, did not contain a religious objector exception.

Prison officials rejected Redd's offer to submit to sputum testing and instead applied the 1996 Policy of TB hold and three chest x-rays, performing the first chest x-ray on Redd one month after he was placed in TB hold. His second and third chest x-rays were performed on November 6, 2001 and May 6, 2002. Because all three x-rays were negative, Redd was released from TB hold in May of 2002, "approximately 5-10 days" after his third chest x-ray and approximately thirteen months and one week after his TB hold was initiated.[1]

On April 9, 2004, Redd filed this suit, pro se, pursuant to 42 U.S.C. § 1983, asserting constitutional and statutory claims

---

[1] Redd was subsequently placed in TB hold twice more for brief periods upon refusing PPD testing on religious grounds, but these subsequent holds are not the subject of Redd's complaint.

4

arising from his placement in TB hold.  The complaint named as defendants: Dr. Lester Wright, Chief Medical Director for DOCS; Hans Walker, Auburn's Superintendent at the commencement of Redd's confinement in TB hold; John Burge, Walker's successor; and Nurse Administrator C. Coynel.  Redd sued each defendant in his or her individual capacity, claiming that the defendants violated:  1) the First Amendment and the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. §§ 2000bb-2000bb-4, by requiring him to submit to a PPD test over his religious objection; 2) the Eighth Amendment by implementing a policy that authorized a potentially indefinite period of confinement in TB hold; and 3) the Fourteenth Amendment by denying him release from TB hold after one year.  Redd's complaint sought only monetary damages.

## I.   District Court Proceedings

After taking Redd's deposition, the defendants moved for summary judgment.  The defendants argued that confining Redd in TB hold under the 1996 Policy did not violate any rights that were clearly established and thus, "[b]ased upon th[e] timeline of relevant case law," the defendants were entitled to qualified immunity and summary judgment.  Defs' Mem. in Supp. of Mot. for Summ. J. at 10.

The district court granted the defendants' motion for summary judgment in its entirety, applying the two-step analysis

5

for claims of qualified immunity as then required by Saucier v. Katz, 533 U.S. 194 (2001). The district court first considered whether, viewed in the light most favorable to Redd, the facts alleged supported Redd's claim that his constitutional rights were violated. With respect to Redd's First Amendment religion claim, the district court determined that, following Selah v. Goord, 255 F. Supp. 2d 42, 55 (N.D.N.Y. 2003), and Reynolds v. Goord, 103 F. Supp. 2d 316, 339 (S.D.N.Y. 2000), confining Redd to TB hold unreasonably burdened his right to free exercise of religion and, therefore, that the 1996 Policy was unconstitutional as applied to Redd. Redd v. Wright, No. 9:04-CV-00401 (N.D.N.Y. filed Aug. 9, 2006). The district court also concluded in a footnote that the 1996 Policy violated the RLUIPA, which "imposes a standard of strict scrutiny upon burdens on the free exercise of religion of incarcerated persons in state prisons." Id. at 7 n.9.[2]

Having concluded that Redd's First Amendment/RLUIPA claim

---

[2] Redd's complaint identified RFRA as the statutory basis for his religious freedom claim. The district court construed the complaint to allege a violation of RLUIPA. Redd does not challenge this construction of his claim, and the differences between RFRA and RLUIPA are immaterial for purposes of this appeal. This court has previously applied case law decided under RFRA to issues that arise under RLUIPA. See Westchester Day Sch. v. Village of Mamaroneck, 504 F.3d 338, 353 (2d Cir. 2007); see also Koger v. Bryan, 523 F.3d 789, 802 (7th Cir. 2008) ("RLUIPA did not announce a new standard, but shored up protections Congress had been attempting to provide since 1993 by means of the RFRA, and which had seen frequent litigation in the prison context.").

6

survived the first step of the Saucier test, the district court then considered whether Redd's First Amendment and/or RLUIPA rights were clearly established at the time of the alleged violation. The district court found that, during the period that Redd was in TB hold, because neither this court nor the Supreme Court had held that application of the 1996 Policy to religious objectors violated the Free Exercise Clause or RLUIPA, and because there was a conflict among state and lower federal courts on the issue, the rights at issue were not clearly established. Therefore, the district court held that the defendants were entitled to qualified immunity on the First Amendment/RLUIPA claims. Id. at 18.

With regard to Redd's Eighth and Fourteenth Amendment claims, the district court found no constitutional violation. The district court held that the alleged deprivations were insufficient to constitute cruel and unusual punishment under applicable precedent and that Redd had not shown that the defendants were "deliberately indifferent to his health or safety" in applying the 1996 Policy to him. Id. at 8. The district court also rejected Redd's argument that, by holding him longer than twelve months, the defendants violated his Fourteenth Amendment due process rights, reasoning that Redd had no "protected interest in immediate release from TB hold after one calendar year." Id. at 12. The district court alternatively

applied the three-factor test in Mathews v. Eldridge, 424 U.S. 319 (1976), concluding that the "length and conditions" of Redd's confinement did not violate due process because the 1996 Policy "provide[d] adequate procedural protection for any state infringement on [Redd's] liberty interest." Redd, at 15. Finally, the district court rejected an additional claim first raised in Redd's opposition to summary judgment that he had been unconstitutionally denied regular showers or exercise, despite their requirement under the 1996 Policy. The district court denied this claim because it was not included in the complaint. The district court also refused Redd leave to amend, stating that "[t]o permit [Redd] to amend his Complaint at this stage, over two years after instituting the action, would be unfairly prejudicial to Defendants." Id. at 9-10.

This appeal followed.

## DISCUSSION

**I.    Standard of Review**

This court reviews a grant of summary judgment de novo, Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 126 (2d Cir. 2004), "constru[ing] the facts in the light most favorable to the non-moving party and . . . resolv[ing] all ambiguities and draw[ing] all reasonable inferences against the movant." Id. (internal quotation marks omitted). Summary judgment may not be granted if any genuine issue exists with respect to material

facts. <u>Tenenbaum v. Williams</u>, 193 F.3d 581, 593 (2d Cir. 1999). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Stuart v. Am. Cyanamid Co.</u>, 158 F.3d 622, 626 (2d Cir. 1998) (internal quotation marks omitted).

**II. Redd's RLUIPA and First Amendment Claims**

Redd's religious-liberty claims derive from two independent sources: § 3 of RLUIPA, 42 U.S.C. § 2000cc-1, and the Free Exercise Clause of the First Amendment. Under RLUIPA, a plaintiff must demonstrate that the state has imposed a substantial burden on the exercise of his religion; however, the state may overcome a RLUIPA claim by demonstrating that the challenged policy or action furthered a compelling governmental interest and was the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-1(a). Under the First Amendment, the law is less generous to plaintiff prisoners; a generally applicable policy will not be held to violate a plaintiff's right to free exercise of religion if that policy "is reasonably related to legitimate penological interests." <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 349 (1987) (internal quotation marks omitted).

As a result of the Supreme Court's decision in <u>Pearson v. Callahan</u>, 129 S. Ct. 808 (2009), <u>overruling</u> <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), we are no longer required to determine whether

9

Redd's rights were violated under the First Amendment and RLUIPA if we determine that the rights claimed by Redd were not "clearly established" at the time of the alleged violation. Id. at 818. The task of framing the right at issue with some precision is critical in determining whether that particular right was clearly established at the time of the defendants' alleged violation.

Redd claims that the right at issue here should be characterized as the right "not to be subjected to punishment or more burdensome confinement as a consequence of his religious beliefs," Redd Br. 26. As the defendants note, however, the Supreme Court has expressly cautioned against framing the constitutional right at too broad a level of generality. Wilson v. Layne, 526 U.S. 603, 615 (1999). And we have interposed a "reasonable specificity" requirement on defining the contours of a constitutional right for qualified immunity purposes. Dean v. Blumenthal, 577 F.3d 60, 67-68 (2d Cir. 2009). Redd's characterization of his right is not "reasonably specific" because it fails to account for the 1996 Policy in particular. We agree with the defendants that the right at issue here is Redd's right under the First Amendment and RLUIPA to a religious exemption from the 1996 Policy.

At the time Redd was confined in TB hold, it had not been clearly established by either the Supreme Court or this court that the 1996 Policy, or a substantially equivalent policy, was

nor reasonably related to a legitimate penological interest nor that such terms are not the least restrictive means of furthering a compelling governmental interest. For those reasons, the defendants are entitled to qualified immunity with respect to Redd's First Amendment and RLUIPA claims. Redd can point to no relevant case law declaring the 1996 Policy, or any substantially similar policy, invalid under either the First Amendment or RLUIPA. Redd cites other prisoners' rights cases in which we have held generally that prisoners are guaranteed "freedom from discriminatory punishment inflicted solely because of his beliefs, whether religious or secular." See Sostre v. McGinnis, 442 F.2d 178, 189 (2d Cir. 1971) (en banc), abrogated on other grounds by Procunier v. Martinez, 416 U.S. 396 (1974), and Wolfish v. Levi, 573 F.2d 118, 130 (2d Cir. 1978), as recognized by Davidson v. Scully, 694 F.2d 50 (2d Cir. 1982); see also Salahuddin v. Goord, 467 F.3d 263, 275-76 (2d Cir. 2006) (holding it "clearly established . . . that prison officials may not substantially burden inmates' right to religious exercise without some justification"). But this case, unlike the cases cited by Redd, does not involve punishment that targets an inmate for engaging in a religious practice or "solely because of his beliefs." The deprivation in this case was motivated not by animus but by a legitimate "public health concern[]." Wright Br. 22-23.

11

A right may be clearly established, even in the absence of directly applicable Supreme Court or circuit case law, if this case law has foreshadowed a particular ruling on the issue, Tellier v. Fields, 280 F.3d 69, 84 (2d Cir. 2000). Redd argues that Jolly v. Coughlin, 76 F.3d 468 (2d Cir. 1996), and the testimony of Dr. Wright provided in Reynolds v. Goord, 103 F. Supp. 2d 316, foreshadowed a ruling that his right was "clearly established." In particular, Redd argues that the defendants should have known that they were violating his rights because (1) Jolly rejected the defendants' argument that the PPD test was a legitimate method of protecting inmates from tuberculosis, and (2) Dr. Wright testified in Reynolds that the PPD test was not a legitimate way of preventing the spread of TB infection.

Redd's reliance on Jolly and Dr. Wright's testimony is misplaced. Although Redd is correct that Jolly rejected the state's contention that the mandatory PPD test is a reasonable way of preventing the spread of TB in prisons, that court nevertheless recognized that administering an effective TB screening program might be a compelling state interest and that this interest might justify a TB hold policy. Jolly, 76 F.3d at 477-78.[3] Thus, Jolly did not foreshadow a ruling that the 1996

---

[3] Jolly did not involve a First Amendment claim, but a claim under RFRA. Id. at 471. RFRA, like RLUIPA, imposed a "compelling interest" test distinct from and more rigorous than the "reasonableness" test applied to First Amendment claims. For purposes of this case, we may assume that a ruling as to the

12

Policy would be facially invalid under either the First Amendment or RLUIPA. Moreover, the factual predicate that led the court to grant a preliminary injunction in Jolly – Jolly's confinement for three and a half years, id. at 478 – significantly differs from the facts in this case, in which Redd was in TB hold for less than one year and two months. Although Jolly did not foreclose the possibility that a one year confinement in TB hold could violate an inmate's free exercise rights, Jolly specifically declined to draw a line as to the length of confinement beyond which a constitutional violation would occur. See id. at 478 n.5 (leaving open the question whether "a shorter period of confinement" would violate an inmate's free exercise rights).

Nor did Dr. Wright's testimony in Reynolds foreshadow a ruling that DOCS lacked a compelling state interest in implementing a TB hold policy, putting aside for the moment whether expert testimony alone can perform the foreshadowing role we envisioned in Tellier. Dr. Wright's testimony focused on the rationality of a TB hold policy as a means of containing the spread of TB; nowhere did he address the compelling interest in administering an effective TB program or compiling health information on inmates. See Reynolds, 103 F. Supp. 2d at 340. Accordingly, neither Jolly nor Dr. Wright's testimony "clearly

validity or invalidity of the 1996 Policy under RFRA would also establish the policy's validity or invalidity under RLUIPA. See supra note 2.

13

foreshadow[ed]" a holding by this court that the 1996 Policy, as applied in this case, violated Redd's free exercise rights under RLUIPA's "compelling interest" standard, much less under the First Amendment's reasonableness test.  The district court, therefore, did not err in granting qualified immunity to the defendants on Redd's claims under the First Amendment and RLUIPA.

**III. Redd's Eighth Amendment Claim**

Redd challenges the district court's conclusion that the 1996 Policy did not violate his Eighth Amendment rights.  Redd's Eighth Amendment claim is comprised of two distinct challenges. First, Redd argues that the 1996 Policy continued to facially violate the Eighth Amendment, even though DOCS had amended the policy as a result of the court's holding in Jolly.  Second, Redd argues that, even assuming the 1996 Policy did not facially violate the Eighth Amendment, the defendants violated the Eighth Amendment in its application to him because they failed to provide him with regular showers and exercise as required by the policy.  We hold that the facial challenge is barred by the doctrine of qualified immunity and that the as applied challenge was insufficiently pleaded.

**A.  Redd's Facial Challenge**

Redd first claims that, despite DOCS revision of the TB hold policy in an attempt to cure the constitutional infirmities acknowledged by the Jolly court, the 1996 Policy continued to be

14

facially in violation of the Eighth Amendment. Specifically, Redd argues that the Jolly court found the previous 1991 Policy to violate the Eighth Amendment both because "[(1)] it resulted in the denial of all meaningful opportunity for exercise[,] and [(2) it resulted in] an indefinite period of restrictive confinement." Redd Br. 38. In issuing a stay of the preliminary injunction, the district court in Jolly imposed two requirements on Jolly's continued confinement – "one hour of exercise per day and three showers per week." 76 F.3d at 473. In considering Jolly's appeal, we noted that DOCS had subsequently implemented these requirements in the 1996 Policy, and further observed that whether the revised policy continued to violate the Eighth Amendment was an "interesting constitutional question." Id. at 480. By leaving this question open, we did not clearly establish that the revised policy continued to violate inmates' Eighth Amendment rights by denying them "all meaningful opportunity for exercise." Id. at 480-81.

Redd further argues that the 1996 Policy continued to violate the Eighth Amendment despite its revisions because, "[g]iven its permissive language, and the absence of any requirement for timely scheduling of the three x-rays that must be taken six months apart[,] . . . this Policy improperly allow[ed] limitless confinement, in violation of Jolly." Redd Br. 39. Wholly apart from the failure of this argument to state

15

a facial challenge to the 1996 Policy, <u>Jolly</u> does not clearly establish or foreshadow that the policy would violate the Eighth Amendment, whether facially or as applied. Instead, the <u>Jolly</u> court left open exactly what conditions of confinement, including the length of confinement, might satisfy the Eighth Amendment under the 1996 Policy. <u>See</u> 76 F.3d at 480-81 (finding that the conditions applied to Redd under the amended policy did not preclude a claim for prospective relief under the Eighth Amendment when those conditions followed "on the heels of . . . extreme and prolonged confinement"). Thus, it cannot reasonably be said that the defendants acted in violation of clearly established Eighth Amendment law by implementing the 1996 Policy, even if the permissive nature of the policy continued to raise "interesting constitutional question[s]." <u>Id.</u> at 480.

## B. Redd's As Applied Challenge

Redd attempts to raise an as applied challenge, independent of the policy itself, under the Eighth Amendment on the ground that he was denied the regular showers and exercise required by the policy. This claim, however, was not properly before the district court. Nowhere in the complaint does Redd expressly or even implicitly allege that the defendants violated his Eighth Amendment rights by not following the 1996 Policy. The district court did not abuse its discretion in denying Redd permission to

16

introduce a new claim after two years of litigation. See Peterson v. Ins. Co. of N. Am., 40 F.3d 26, 31 (2d Cir. 1994).

**V.    Redd's Due Process Claim**

Finally, Redd argues that the defendants violated his right to due process by confining him in TB hold "without sufficient procedural safeguards."  Redd's alleged due process right was not clearly established at the time of the violation, and therefore the defendants are entitled to qualified immunity on this claim. First, as previously discussed, it was not clearly established that Redd had a right to be released from TB hold after one year. Insofar as any other Second Circuit decision addresses a due process claim in the context of a prisoner's heightened level of confinement, see, e.g., Colon v. Howard, 215 F.3d 227 (2d Cir. 2000) (holding that confinement in normal special housing unit for 305 days is a sufficient departure from ordinary incidents of prison life to require procedural due process protections), no such case is sufficiently similar to have put the defendants on notice that their application of the 1996 Policy violated any clearly established due process right.  Thus, the defendants are entitled to qualified immunity with respect to Redd's claim based on the procedures for curtailing the duration of confinement.

Nor was it clearly established that Redd was entitled to some kind of notice that religious objectors could be exempt from the 1996 Policy or that the defendants' failure to advise Redd of

17

a potential exemption from the PPD test was a violation of his due process rights. Finally, Redd's claim that the 1996 Policy was not justified by a compelling interest in maintaining a successful TB control program, though labeled as a due process argument, is redundant of Redd's properly rejected First and Eighth Amendment challenges.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment on Redd's First, Eighth and Fourteenth Amendment, and his RLUIPA claims, as well as the district court's denial of leave to amend.