13-2694-pr
*Holland v. Goord*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term 2013

(Argued: April 10, 2014          Decided: July 10, 2014)

No. 13-2694-pr

_____

DARRYL HOLLAND,

*Plaintiff-Appellant,*

- v -

GLENN S. GOORD, in his individual capacity, ANTHONY J. ANNUCI, in his official capacity as Acting Commissioner of the Department of Corrections and Community Supervision, ANTHONY F. ZON, in his individual capacity and official capacity as Former Superintendent, Wende Correctional Facility, THOMAS SCHOELLKOPF, in his individual capacity and official capacity as Hearing Officer, Wende Correctional Facility, JOHN BARBERA, in his individual capacity and official capacity as Correctional Officer, Wende Correctional Facility, MARTIN KEARNEY, in his individual capacity and official capacity as Captain, Wende Correctional Facility,

*Defendants-Appellees,*

JAY WYNKOOP, in his individual capacity and official capacity as the Watch Commander and/or Keeplock Review Officer, Wende Correctional Facility,

*Defendant.*[*]

_____

---

[*] Acting Commissioner Anthony J. Annuci has been substituted in place of former Commissioner Brian Fischer, pursuant to Federal Rule of Appellate Procedure 43(c)(2). The Clerk of the Court is directed to amend the caption to reflect the alterations set out above.

Before:      JACOBS, CALABRESI, and LIVINGSTON, *Circuit Judges*.

Appeal from the judgment of the United States District Court for the Western District of New York (Telesca, *J.*), granting the defendants' motion for summary judgment and denying the plaintiff's cross-motion for summary judgment as to the plaintiff's free exercise, retaliation, and due process claims brought pursuant to 42 U.S.C. § 1983, and his claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.* Even assuming *arguendo* that the substantial burden requirement remains a necessary component of a plaintiff's free exercise claim, we conclude that the defendants' conduct placed such a burden on the plaintiff's free exercise rights. Accordingly, we vacate the district court's grant of summary judgment in the defendants' favor, based on its conclusion that the burden imposed here was *de minimis,* and we remand the plaintiff's § 1983 claim for damages under the First Amendment for further consideration of this claim. Because we also conclude that the plaintiff's claim for damages under RLUIPA is barred, that his claims for injunctive relief under RLUIPA and the First Amendment are moot, and that he has failed to state a claim for either a denial of due process or First Amendment retaliation, we affirm the grant of summary judgment in the defendants' favor on those claims.

VACATED AND REMANDED IN PART AND AFFIRMED IN PART.

> JEFFREY A. WADSWORTH (Candace M. Curran, *on the brief*), Harter Secrest & Emery LLP, Rochester, N.Y., *for Plaintiff-Appellant*.
>
> KATE H. NEPVEU, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, and Andrew D. Bing, Deputy Solicitor General, *on the brief*), *for* Eric T. Schneiderman, Attorney General of the State of New York, New York, N.Y., *for Defendants-Appellees*.

DEBRA ANN LIVINGSTON, *Circuit Judge*:

Plaintiff-Appellant Darryl Holland ("Holland"), an inmate and practicing Muslim, asserts that defendant prison officials Glenn Goord, Anthony J. Annuci, Anthony F. Zon, Thomas Schoellkopf, John Barbera, and Martin Kearney (collectively, "Appellees")[1] unconstitutionally burdened his religious exercise when they ordered him to provide a urine sample within a three-hour window – the time limit then permitted by prison regulations – while Holland fasted in observance of Ramadan, the holy month during which Muslims refrain from ingesting food and drink during daylight hours. Though Holland cited his fast to explain why he could not comply with the order or drink water to aid his compliance, Appellees did not permit Holland an opportunity to provide a urine sample after sunset when his fast had ended. Instead, when Holland failed timely to produce a sample, he was ordered confined in keeplock.[2] In this ensuing lawsuit, Holland asserts that

---

[1] Holland also named Lieutenant Jay Wynkoop in his second amended complaint, but the record reflects that he was never served, is not represented by counsel, and is not a party to this appeal.

[2] "Keeplock is a form of administrative segregation in which the inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates." *Peralta v. Vasquez*, 467 F.3d 98, 103 n.6 (2d Cir. 2006) (internal quotation marks omitted). We note the specifics of Holland's keeplock status below.

3

Appellees' order and disciplinary action infringed his rights under the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.* Holland also asserts that his inability to call a witness during a subsequent disciplinary hearing resulted in a denial of due process under the Fourteenth Amendment, and that his confinement in keeplock amounted to First Amendment retaliation. Holland seeks damages and injunctive relief.

Following cross-motions for summary judgment, the district court (Telesca, *J.*) entered judgment in favor of Appellees. Significantly, the district court held that Holland could not prevail on his First Amendment free exercise and RLUIPA claims because Appellees' conduct had placed only a *de minimis* burden on Holland's religious exercise. *See Holland v. Goord*, No. 05 Civ. 6295 (MAT), 2013 WL 3148324, at *11-12 (W.D.N.Y. June 19, 2013). The district court also ruled that, in the alternative, Appellees were entitled to qualified immunity as to Holland's free exercise claims because Holland's right to an exception from the three-hour limit had not been clearly established at the time the order was given. *Id.* at *8-10. Further, the district court noted that RLUIPA does not support Holland's claim for

4

money damages, *id.* at *7; it dismissed Holland's due process claim on the ground that Holland lacked a liberty interest in avoiding keeplock, *id.* at *5-6; and, finally, the court concluded that Holland's First Amendment retaliation claim was properly dismissed because Holland failed to raise any issue as to a retaliatory motive underlying his keeplock confinement, *id.* at *13-14.

On appeal, we conclude that the choice either to provide a urine sample by drinking water during his fast or to face disciplinary action placed a substantial burden on Holland's religious exercise. Accordingly, we vacate the district court's judgment insofar as it concerns Holland's claim for damages under the First Amendment's Free Exercise Clause and remand for further consideration of this claim. We affirm the remainder of the judgment, albeit largely on alternate grounds.

BACKGROUND

**A. Facts**

Holland was incarcerated in Wende Correctional Facility ("Wende") from 1999 until 2005, during which time he converted to Islam. On November 20, 2003, Martin Kearney, a captain at Wende, purportedly received information that Holland was using drugs and directed John Barbera, a correctional officer at Wende, to

5

obtain a urine sample from him. At the time, New York State Department of Correctional Services ("DOCS") Directive 4937 required that inmates provide a urine sample within three hours of being ordered to do so, without exception. The Directive also provided that inmates could be given up to eight ounces of water per hour during the three-hour time span to assist in their production. On Kearney's order, Barbera directed Holland to provide a urine sample. However, Holland stated that he was unable to do so, citing his fast in observance of Ramadan. Holland also refused water on those grounds. Though Holland offered to drink water and provide a sample after sunset, when his fast had ended, Barbera declined to permit an exception to the Directive. After three hours had elapsed and Holland had failed to comply with the order, Barbera issued a misbehavior report charging Holland with violating the urinalysis guidelines and defying a direct order. Holland was then placed in keeplock pending a disciplinary hearing on the matter.

At that hearing, Holland testified that he had been unable to provide a sample when he was ordered to do so because he could not drink water prior to sunset during Ramadan. Holland also requested that his imam be permitted to attest to these beliefs; however, Thomas Schoellkopf, a hearing officer at Wende, refused to

permit the witness, stating that it was unnecessary to call the imam given that he had not been present at the incident and that his testimony regarding the practice of Muslims observing the Ramadan fast would be duplicative of Holland's. Following this exchange, Schoellkopf found Holland guilty of violating the urinalysis guidelines, stating that he was "not aware of any religious exceptions such as Ramadan that excuse[] . . . participation in drug testing."  Schoellkopf also found Holland not guilty of the charge that he failed to comply with a direct order, stating that his "more lenient disposition" was an attempt to "encourage [Holland] to follow the urinalysis guidelines in the future."  In light of the guilty disposition on the urinalysis charge, Schoellkopf sentenced Holland to 90 days in keeplock, as well as 90 days of lost privileges.

Holland initiated several administrative appeals of the verdict from keeplock and sent a letter to Anthony F. Zon, the then-Superintendent of Wende, informing him of the sentence.  Holland's imam also sent a memorandum to Kearney, reaffirming Holland's beliefs, questioning why Holland had not been permitted to provide a sample after sunset, and asking Kearney to "look into" the matter. While Holland's initial appeals were resolved in his favor – with Zon determining on

7

January 21, 2004 that "[u]rinalysis testing could be taken after sunset" – Holland was not immediately released from keeplock. Instead, Holland further appealed his claims until, on February 5, 2004, the Director of Special Housing/Inmate Discipline working under then-DOCS Commissioner Glenn Goord reversed and expunged the disciplinary action, citing Schoellkopf's failure to elicit relevant testimony from Holland's imam. Holland was released from keeplock that day, after serving 77 days in detention. While in keeplock, Holland was confined to his cell for 23 hours each day, was barred from attending Islamic services, including the Eid ul-Fitr feast celebrating the end of Ramadan, allegedly received "punishment trays" containing meager portions, and lost his seniority and higher wage job at Wende.

**B. Procedural History**

Holland filed the underlying action *pro se* in June 2005. After his complaint survived two motions to dismiss, *see Holland v. Goord*, No. 05 Civ. 6295 (CJS), 2007 WL 2789837 (W.D.N.Y. Sept. 24, 2007); *Holland v. Goord*, No. 05 Civ. 6295 (CJS), 2006 WL 1983382 (W.D.N.Y. July 13, 2006), Holland was appointed counsel and filed a second amended complaint, asserting under 42 U.S.C. § 1983 and RLUIPA that the order to provide a urine sample and his resultant confinement in keeplock violated

8

his right to free exercise of religion. Holland also asserted under 42 U.S.C. § 1983 that Schoellkopf's refusal to call his imam as a witness denied him due process under the Fourteenth Amendment, and that his confinement in keeplock amounted to retaliation for his religious beliefs in violation of the First Amendment. As relevant here, Holland sought damages and injunctive relief. As part of Holland's requested injunctive relief, he sought an order requiring DOCS to amend Directive 4937 to "include express protection" for inmates fasting during Ramadan.

In June and July 2010, the parties cross-moved for summary judgment. In May 2012, after seven years of litigation and while the parties' motions were fully briefed, DOCS added a "Note" to Directive 4937 advising that

> [i]nmates participating in an approved religious fast should not be required to provide a urine sample during fasting periods since consumption of water may be necessary. Sample requests should be scheduled during other periods of the day and normal urinalysis testing procedures should then apply, including offering water to those inmates unable to provide a urine sample.

Appellees did not notify either the district court or Holland that this note had been added.

On June 18, 2013, the district court granted Appellees' motion for summary judgment and denied Holland's cross-motion. In its decision, the district court held

that the order to provide a urine sample placed only a "*de minimis*" burden on Holland's religious exercise, defeating Holland's First Amendment free exercise and RLUIPA claims. *Holland*, 2013 WL 3148324, at *12. In reaching that conclusion, the court credited Holland's imam's testimony that Holland could have fasted for one additional day to atone for taking a drink of water to aid compliance with the order. *Id.* In addition, the district court held that Appellees were entitled to qualified immunity from Holland's free exercise claims because the right to an exception from Directive 4937 had not been clearly established in November 2003. *Id.* at *8-10. The court also noted that RLUIPA did not support Holland's claim for money damages. *Id.* at *7. Finally, the district court concluded that Holland lacked a protected liberty interest in remaining free from keeplock, precluding his due process claim, and that Holland had not drawn a causal connection between his religious exercise and Appellees' disciplinary action, precluding the First Amendment retaliation claim. *Id.* at *5-6, *13-14. Holland appealed.

## DISCUSSION

We review a district court's grant of summary judgment *de novo*, construing all facts in favor of the nonmoving party. *See Jeffreys v. City of New York*, 426 F.3d

549, 553 (2d Cir. 2005). Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Jeffreys*, 426 F.3d at 553.

**A. First Amendment Free Exercise Claim**

It has not been decided in this Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a "prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006); *see Ford v. McGinnis*, 352 F.3d 582, 592 (2d Cir. 2003) (assuming without deciding that substantial burden requirement applies). Holland challenges the continued viability of the "substantial burden" test in light of the Supreme Court's statement in *Employment Division v. Smith* that application of the test embroils courts in "the unacceptable business of evaluating the relative merits of differing religious claims." *Ford*, 352 F.3d at 592 (quoting *Emp't Div. v. Smith*, 494 U.S. 872, 887 (1990)) (internal quotation marks omitted); *see also Williams v. Morton*, 343 F.3d 212, 217 (3d Cir. 2003) (declining to apply the substantial burden test to a § 1983 claim regarding the availability of meals conforming to religious dictates in prison). However, we need not decide the issue

11

here, as even assuming the continued vitality of the substantial burden requirement, our precedent squarely dictates that Holland's religious exercise was unconstitutionally burdened – a point, moreover, that Appellees do not contest on appeal. *See Salahuddin*, 467 F.3d at 275 n.5 (declining to address continued viability of substantial burden test when the defendants failed to argue that the inmate's burdened religious practice was "peripheral or tangential to [his] religion"); *see also Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) (noting that a "substantial burden" exists when "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs" (internal quotation marks and alterations omitted)).

In one of several cases concerning this issue, we held in *Ford v. McGinnis* that a Muslim inmate's free exercise rights would be substantially burdened if prison officials denied his request for a meal to celebrate the Eid ul-Fitr feast. 352 F.3d at 593-94. Though a question of fact remained as to whether the meal had, in fact, been denied, in vacating summary judgment in favor of the defendants, we emphasized both that the inmate had credibly claimed that the meal was "critical to his observance as a practicing Muslim" and that inmates have a "clearly established"

12

right "to a diet consistent with [their] religious scruples." *Id.* at 594, 597 (internal quotation marks omitted). Then, in *McEachin v. McGuinnis*, we cited this language to hold that an inmate stated a free exercise claim based on his assertion that prison officials had denied him "properly blessed food" to break his fasts during Ramadan. 357 F.3d 197, 201-03 (2d Cir. 2004). Though the Court declined to address the substantial burden standard on a motion to dismiss, we emphasized that "courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights," noting that this Court had recognized such a principle since "at least as early as 1975." *Id.* at 203 (citing *Kahane v. Carlson*, 527 F.2d 492, 495 (2d Cir. 1975) (determining that Orthodox Jewish inmate had right to provision of kosher meals)). Finally, in *Jolly v. Coughlin*, we held that forcing an inmate to choose between his religious beliefs – which forbade the medical testing prison officials attempted to impose upon him – or confinement in keeplock "itself constitute[d] a substantial burden." 76 F.3d at 477.

Taken together, these cases clearly support the conclusion that ordering Holland to provide a urine sample – and drink water in violation of his fast – or face

confinement in keeplock substantially burdened Holland's free exercise right. First, it is undisputed that Holland is a practicing Muslim and that fasting in observance of Ramadan is a core tenet of his faith. *See Holland*, 2013 WL 3148324, at *11. Thus, there can be no debate that directly ordering Holland to drink water in violation of his fast would substantially burden his free exercise rights. As we stated in *Ford* and reiterated in *McEachin*, inmates "have a 'clearly established' right 'to a diet consistent with their religious scruples.'" *See McEachin*, 357 F.3d at 203 (quoting *Ford*, 352 F.3d at 597) (brackets omitted). The difference between the denial of a meal and the imposition of a drink is of no constitutional significance. *See id.* at 204-05 (stating, in light of the inmate's claim that an officer deliberately ordered him to act in contravention of his beliefs, that "[p]recedent suggests that inmates have a right not to be disciplined for refusing to perform tasks that violate their religious beliefs"). By contrast, the district court's conclusion that the order to provide a urine sample placed only a "*de minimis*" burden on Holland's free exercise because he could "make up" a premature drink of water with "one extra day of fasting," *see Holland*, 2013 WL 3148324, at *11-12 (quoting Holland's and his imam's testimony), finds no support in our case law. While this Court has suggested that "[t]here may

14

be inconveniences so trivial that they are most properly ignored," *McEachin*, 357 F.3d at 203 n.6, the uncontradicted evidence submitted by Holland that breaking his fast prior to sunset would have been a "grave sin" – regardless whether atonement was possible – prevented such a conclusion in this case.

The closer question identified but not determined by the district court is whether, in the district court's words, an "issue as to causation" barred Holland's claim. *See Holland*, 2013 WL 3148324, at *10. That is, while the denial of a religious meal plainly burdens the inmate's right to eat that meal, as in *Ford* and *McEachin*, it is not self-evident that an inmate's inability or refusal to provide a urine sample followed from his fast-related forbearance from drinking water. However, no such question of fact exists in this case. Holland explained to Schoellkopf at his disciplinary hearing that he had not complied with the order because he was fasting during Ramadan and, as a result, "was not able to go to the bathroom due to [his] not being able to drink any water." And, in his deposition, Schoellkopf stated that he "believed" Holland's statement, though he nonetheless sentenced him to 90 days in keeplock because there was no exception to the DOCS rule.

If Appellees were able to counter these facts, they have failed to do so.

Instead, Appellees argued broadly below that Holland could not establish a link between his fast and failure to comply with the order, while neglecting to cite record evidence countering the foregoing material. *See, e.g.*, Mem. in Support of Summary Judgment, *Holland v. Goord*, No. 05 Civ. 6295, Doc. No. 75, at 19 (W.D.N.Y. June 16, 2010) ("It is common knowledge that people that do not eat or drink for a day are still able to produce urine."). But no such argument has been advanced on appeal. Thus, it is now uncontested that Holland, a practicing Muslim, was unable to comply with the order to provide a urine sample within three hours because he was fasting in observance of Ramadan. While Appellees permitted Holland a choice between prematurely breaking his fast or facing confinement in keeplock, that choice – as has been clearly established by our precedent for decades – placed a substantial burden on the free exercise of his religion. *See Jolly*, 76 F.3d at 477.

Of course, this conclusion does not end the inquiry into Holland's First Amendment free exercise claim. Given the "difficult judgments" attendant to prison operation, *Turner v. Safley*, 482 U.S. 78, 89 (1987), "a generally applicable policy" – even one that burdens an inmate's free exercise – "will not be held to violate a plaintiff's right to free exercise of religion if that policy 'is reasonably related to

16

legitimate penological interests,'" *Redd v. Wright*, 597 F.3d 532, 536 (2d Cir. 2010) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)). To make this determination, a court must consider:

> whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact on guards, inmates, and prison resources of accommodating the right; and the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests.

*Salahuddin*, 467 F.3d at 274 (footnote omitted) (citing *Turner*, 482 U.S. at 90-91). Zon's determination that the urinalysis could have been conducted after sunset and DOCS's subsequent amendment of Directive 4937 (not to mention Appellees' failure to address these points on appeal) give us pause as to whether Appellees can demonstrate a valid penological interest pursuant to this standard. Nevertheless, because the district court did not reach this question below, we decline to address it for the first time on appeal. *See Dardana Ltd. v. Yuganskneftegaz*, 317 F.3d 202, 208 (2d Cir. 2003) ("It is this Court's usual practice to allow the district court to address arguments in the first instance.").

In addition, we decline to address in the first instance the issue of qualified

17

immunity as regards the state's penological interest in the previous policy. To assess a defendant's entitlement to qualified immunity, a court must consider "both the clarity of the law establishing the right allegedly violated as well as whether a reasonable person, acting under the circumstances then confronting a defendant, would have understood that his actions were unlawful." *Hanrahan v. Doling*, 331 F.3d 93, 98 (2d Cir. 2003) (per curiam) (internal quotation marks omitted). The district court ruled that it had not been clearly established at the time of the order that "Directive # 4937, or a substantially equivalent policy, placed a substantial burden on an inmate's religious liberty," *Holland*, 2013 WL 3148324, at *9, a conclusion that we reject by our holding today. *See Ford*, 352 F.3d at 597 ("[C]ourts need not have ruled in favor of a prisoner under precisely the same factual circumstance in order for [a] right to be clearly established."). However, the district court did not address other aspects of Appellees' qualified immunity claim, including the question whether a reasonable officer might have believed that the challenged order was lawful in light of legitimate penalogical interests supporting Directive 4937, as it existed at the time. Nor has the district court examined whether certain Appellees should be dismissed from this suit for a lack of personal

18

involvement in the claimed constitutional deprivations. *See Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). We leave these issues to the district court for consideration on remand.

We do not, however, require that the district court assess Holland's entitlement to all of the relief he seeks on remand. In his second amended complaint, Holland sought both damages and injunctive relief pursuant to his free exercise claim. Since the filing of that complaint, DOCS has amended Directive 4937 to include the "express protection" for inmates fasting during Ramadan that Holland's complaint seeks. While a defendant's "voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice," it is nonetheless "an important factor bearing on the question whether a court should exercise its power" to entertain a request for injunctive relief or declare it moot. *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). Of course, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013) (internal quotation marks omitted).

19

We conclude that Appellees have satisfied that burden here. First, DOCS has amended Directive 4937 specifically to prohibit the conduct of which Holland complains, an act meriting some deference. *See Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 59 (2d Cir. 1992) (dismissing as moot an appeal concerning a minority set-aside program after the state administratively suspended the program, in part, because "[s]ome deference must be accorded to a state's representations that certain conduct has been discontinued"); *see also Massachusetts v. Oakes*, 491 U.S. 576, 582 (1989) (deeming overbreadth challenge moot due to the state's amendment of the challenged statute). Moreover, Holland succeeded in his administrative appeal – eliciting a determination from Zon that Holland should have been permitted to provide a urine sample after sunset in light of his religious fast – and Appellees have abandoned on appeal their argument that the conduct at issue was constitutional. *Cf. Nike*, 133 S. Ct. at 728 ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." (quoting *Davis v. Wakelee*, 156

20

U.S. 680, 689 (1895) (internal quotation marks and brackets omitted)). Given these circumstances (as well as the further assurance provided by our decision today) we deem it clear that the allegedly wrongful policy is not likely to be reinstated. Accordingly, we dismiss as moot Holland's request for injunctive relief pursuant to his First Amendment free exercise claim, and remand only his request for damages.

**B. RLUIPA Claim**

RLUIPA provides a more stringent standard than does the First Amendment, barring the government from imposing a substantial burden on a prisoner's free exercise unless the challenged conduct or regulation "further[s] a compelling governmental interest and [is] the least restrictive means of furthering that interest." *Redd*, 597 F.3d at 536 (citing RLUIPA, 42 U.S.C. § 2000cc-1(a)). Under the foregoing analysis, Holland would likely prevail on the substance of his RLUIPA claim. Nevertheless, Holland is not entitled to either damages or injunctive relief under the statute. First, as the district court held below and Holland concedes on appeal, RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities. *See Washington v. Gonyea*, 731 F.3d 143, 145-46 (2d Cir. 2013) (per curiam) (citing *Sossamon v. Texas*, 131 S. Ct. 1651, 1663

21

(2011)). Thus, Holland's claim for damages against Appellees is barred. Second, we deem Holland's claim for injunctive relief under RLUIPA moot for the same reasons discussed above regarding the injunctive relief requested as part of his free exercise claim. Thus, we affirm the district court's judgment in favor of Appellees on Holland's RLUIPA claims.

### C. Fourteenth Amendment Due Process Claim

Ordinarily, an "inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). The right to call witnesses is limited in the prison context, however, "by the penological need to provide swift discipline in individual cases" and "by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." *Ponte v. Real*, 471 U.S. 491, 495 (1985). Thus, "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary

22

evidence." *Id.* at 496 (quoting *Wolff*, 418 U.S. at 566). Citing *Ponte*, we have stated that "[t]he Supreme Court . . . has suggested that a prisoner's request for a witness can be denied on the basis of irrelevance or lack of necessity." *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30-31 (2d Cir. 1991) (citing *Ponte*, 471 U.S. at 496). The refusal to call witnesses whose testimony would be redundant is not a violation of any established due process right. *See Russell v. Selsky*, 35 F.3d 55, 58-59 (2d Cir. 1994) (holding that a prison hearing officer "did not violate any clearly established constitutional or statutory right" for refusing to call inmate's suggested witnesses, who would have given "duplicative or non-probative" testimony).

Holland sought to call his imam as a witness at his disciplinary hearing to establish that, as a practicing Muslim, Holland was unable to drink water at the time he was ordered to provide a urine sample. However, Holland had already testified to this fact and Schoellkopf did not discredit his statement. Instead, Schoellkopf determined that there were no "religious exceptions such as Ramadan" to excuse Holland's noncompliance with Directive 4937. Because Holland's imam would have corroborated an established fact, and any additional testimony that he might have given did not go to the basis of Schoellkopf's decision, Schoellkopf did not err in

23

characterizing the imam's proposed testimony as unnecessary and redundant. While Holland asserts that he should have nonetheless been permitted to call his imam because there was no risk that his five-minute disciplinary hearing would drag on "*ad infinitum*," *Russell*, 35 F.3d at 59, this Court has never announced such a limitation on prison officials' discretion. Accordingly, we conclude that Schoellkopf acted within his discretion when he refused to call Holland's imam as a witness, and we affirm the entry of judgment in Appellees' favor on this claim.[3]

**D. First Amendment Retaliation Claim**

To prevail on a First Amendment retaliation claim, an inmate must establish "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected [conduct] and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (internal quotation marks omitted). An inmate bears the burden of showing that "the protected conduct was a substantial or motivating factor" in the prison officials' disciplinary decision. *Graham v. Henderson*, 89 F.3d 75,

---

[3] While the Director of Special Housing/Inmate Discipline reversed Holland's keeplock sentence on the procedural ground that Schoellkopf had erred in failing to call the imam, as our earlier discussion indicates, that keeplock reversal was correct on the merits.

79 (2d Cir. 1996). The defendant official then bears the burden of establishing that the disciplinary action would have occurred "even absent the retaliatory motivation," which he may satisfy by showing that the inmate "committed the . . . prohibited conduct charged in the misbehavior report." *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (internal quotation marks omitted).

Holland has not proffered any evidence supporting his claim that Appellees took disciplinary action against him because of his religion. While Holland's religious observation caused him to decline to provide a urine sample, which in turn prompted the disciplinary action, Holland cites no case law holding that such an attenuated link can constitute a "substantial or motivating factor" for retaliation. Nor has Holland rebutted Appellees' evidence that they would not have acted differently if he had declined to comply for reasons other than religion, given that Directive 4937 did not permit exceptions for religious exercise at the time of the order. Though Holland notes that other exceptions to the Directive had been permitted, those exceptions went to inmates with a medically recognized inability to provide a sample, such as inmates on dialysis. Holland cites no other exceptions to support his otherwise conclusory assertion that Appellees disciplined him

25

because of his religion.  Thus, the district court's judgment in favor of Appellees on this claim is affirmed.

**CONCLUSION**

For the foregoing reasons, we vacate the judgment on Holland's free exercise claim and remand for further proceedings as to this claim, to the extent that Holland seeks damages.  We affirm the judgment in favor of Appellees on Holland's RLUIPA claim, his Fourteenth Amendment claim, his First Amendment retaliation claim, and his free exercise claim for an injunction.  Therefore, the judgment of the district court entered June 18, 2013, is VACATED AND REMANDED IN PART AND AFFIRMED IN PART.