15-117-pr
*Smith v. Perlman*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of August, two thousand sixteen.

Present:
> DEBRA ANN LIVINGSTON,
> SUSAN L. CARNEY,
> > *Circuit Judges*,
> TIMOTHY C. STANCEU,
> > *Judge*.[*]

---

AUREL SMITH,

> *Plaintiff-Appellant*,

> v.                                                          No. 15-117-pr

KENNETH PERLMAN, MARK LEONARD, DANIEL MARTUSCELLO, R. SHANLEY, JEFFREY A. HALE, HARRY S. GRAHAM, G. ROBINSON,

> *Defendants-Appellees*.[†]

---

[*] The Honorable Timothy C. Stanceu, Chief Judge of the United States Court of International Trade, sitting by designation.

[†] The Clerk of Court is directed to modify the caption as above.

For Plaintiff-Appellant:     COLIN REARDON (Alan E. Schoenfeld, *on the brief*), Wilmer Cutler Pickering Hale and Dorr LLP, New York, N.Y.

For Defendants-Appellees:    ZAINAB A. CHAUDHRY (Andrew D. Bing, Barbara D. Underwood, *on the brief*) *for* Eric T. Schneiderman, Attorney General for the State of New York, Albany, N.Y.

**UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **VACATED** and the case **REMANDED** for further proceedings consistent with this order.

Plaintiff-Appellant Aurel Smith ("Smith") is a practicing Muslim and an inmate currently in the custody of New York State.   He challenges two policies instituted by the New York State Department of Corrections and Community Supervision ("Department").[1]   The first concerns the Department's policy on the diets it provides to inmates, which Smith challenges under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq.* The second relates to the Department's policy on the number of religious holidays inmates may celebrate with family and friends, which Smith challenges under the Equal Protection Clause of the Fourteenth Amendment.   Smith now appeals from a judgment of the United States District Court for the Northern District of New York (D'Agostino, *J.*), entered December 19, 2014, granting summary judgment to the Department on both claims.[2]   The Department has conceded, and we agree, that the portion of the judgment that granted summary judgment as to the RLUIPA

---

[1] Defendants-Appellees are various individuals who hold high-level positions either in the Department or in the Auburn Correctional Facility where Smith was housed during the events in question.   We refer to Defendants-Appellees collectively as the "Department."

[2] The district court also granted summary judgment to the Department on several other claims that are not the subject of the present appeal.

claim should be vacated.[3]  Accordingly, this summary order addresses only Smith's Equal

Protection claim.  We assume the parties' familiarity with the underlying facts, the procedural

history of the case, and the issues on appeal, which we reference only as necessary to explain our

decision to vacate.

## I.    Background

The Department allows inmates who adhere to religious groups to celebrate certain

religious holidays with their family and friends.  These days are designated "family event

---

[3] Under RLUIPA, states and local governments may not take any action that "substantial[ly] burden[s] . . . the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person . . . (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  *Holt v. Hobbs*, 135 S. Ct. 853, 860 (2015) (quoting 42 U.S.C. § 2000cc–1(a)); *see also Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014).  RLUIPA stands in contrast to the Free Exercise Clause's rational-relationship test.  *Id.*  A law that is both neutral and generally applicable is "presumed to be valid and will be sustained" under the Free Exercise Clause "if the [burden imposed] by the [law] is rationally related to a legitimate state interest."  *Central Rabbinical Congress of U.S. & Canada v. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 186 n.2 (2d Cir. 2014) (first alteration in original) (quoting *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 54 (2d Cir. 2007)).  Although the district court acknowledged that Smith raised both a Free Exercise and a RLUIPA challenge to the Department's diet policy, and further concluded that summary judgment to the Department was proper with respect to both claims, the district court apparently analyzed only whether the Department's diet policy was rationally related to a legitimate state interest.  The district court did not expressly consider whether the Department's diet policy survived the stricter RLUIPA standard.

The Department concedes that this was error that warrants vacatur.  Counsel for Smith, meanwhile, acknowledged at oral argument on appeal that the current record is rather thin with respect to facts concerning Smith's RLUIPA claim and could benefit from further development.  We therefore vacate the district court's grant of summary judgment to the Department on Smith's RLUIPA claim and remand to the district court to develop a fuller record of the relevant facts, as well as to assess in the first instance whether Smith's challenge to the Department's diet policy survives the heightened standard under RLUIPA.  *See Reynolds v. Giuliani*, 506 F.3d 183, 197 (2d Cir. 2007) ("On review of a district court decision that rests on an improper legal standard and omits necessary factual and legal analysis, it is often appropriate to remand the case to the trial court for its reconsideration."); *see also Freeplay Music, Inc. v. Verance Corp.*, 80 F. App'x 137, 139 (2d Cir. 2003) ("Because it is unclear whether the evidence on which the district court relied was all the evidence the parties could have adduced in a Rule 56 motion for summary judgment, we vacate for proper resolution under Rule 56 upon a complete record.").

Before 2008, when the Department began to change its policy on family event days to its current form, the Department allowed many, if not all, religious groups multiple family day events. Under the Department's current written policy on family event days, however, each religious group receives one family event day, with the exception of the Native American group, which receives nine family event days.

The Department's policy on family event days for Native American inmates stems from a lawsuit brought by certain Native American inmates in the custody of New York State in the late 1990s, *Hughes v. Goord*, No. 97-cv-06431 (W.D.N.Y.), in which the Native American inmates alleged that various Department policies violated their constitutional rights. As part of the parties' agreement in 1999 to settle the lawsuit, the Department stipulated to providing all Native American inmates eight family event days.[4] The terms of the Department's stipulation lasted three years from the date of the agreement and thus automatically ceased to bind the parties in 2002. Nevertheless, when the Department decided in 2008 to reduce the number of family days for religious groups, it exempted the Native American religious group from the reduction.

## II. Smith's Equal Protection Challenge to the Department's Family Event Policy

Smith argues that the district court erred in granting summary judgment to the on his claim that the Department's policy on religious family event days violates the Equal Protection Clause of the Fourteenth Amendment. In the prison context, "the Supreme Court has accorded great deference to determinations of prison officials and fashioned 'a lesser standard of scrutiny . . . in determining the constitutionality of . . . prison rules.'" *Benjamin v. Coughlin*,

---

[4] On the current record, it is unclear why the Department at some point decided to provide Native American inmates nine family event days. It is undisputed, however, that the Department stipulated to providing Native American inmates eight family event days in 1999, and that the Department currently provides Native American inmates nine family event days.

4

F.2d 571, 574 (2d Cir. 1990) (quoting *Turner v. Safley*, 482 U.S. 78, 81 (1987)); *see also O'Lone Estate of Shabazz*, 482 U.S. 342, 349 (1987). Generally, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. *But see Johnson v. California*, 543 U.S. 499, 507–14 (2005) (holding that strict scrutiny, rather than the less stringent standard of scrutiny *Turner* and *Shabazz*, applies to racial classifications even in the prison context). "The standard is one of reasonableness," and in assessing whether that standard has been met, we "consider[] . . . 1) whether there is a rational relationship between the regulation and the government interests asserted; 2) whether the inmates have alternative means to exercise the 3) the impact that accommodation of the right will have on the prison system; and 4) whether alternatives exist which accommodate the right and satisfy the governmental interest." 905 F.2d at 574.[5]

In granting summary judgment to the Department on Smith's Equal Protection claim, the district court relied principally, if not exclusively, on the Department's statements that the Native American religious group was singular in its need for family participation in multiple religious holidays, while other religious groups do not strictly require family participation as part of religious observance and thus would not be limited in such observance by the reduction to a family event day. *See Smith v. Perlman*, No. 09:11–cv–00020 (MAD/CFH), 2014 WL at *14 (N.D.N.Y. Dec. 19, 2014). According to the district court, the Department had a "legitimate penological interest" in accommodating what it perceived to be the "unique need" of Native American inmates and a policy that was "rationally related" to that legitimate penological

---

[5] Although "the *Turner/Shabazz* standard was established in the context of first amendment issues, it is also relevant to the assessment of equal protection claims in the prison setting." *Benjamin*, 905 F.2d at 575.

interest.  *Id.*  As the Department conceded at oral argument on appeal, however, it was "not appropriate for [the Department] to . . . mak[e] [a] religious judgment" about "the relative importance of family participation" across "different religious groups."  *See* Oral Argument at 55:59–57:20, *Smith v. Perlman*, No. 15-117-pr (2d Cir. 2016).  For courts to credit a state's judgment about the observance requirements of various religious groups "would necessarily lead [courts] down the unnavigable road of attempting to resolve . . . disputes over religious law and doctrine."  *Ford v. McGinnis*, 352 F.3d 582, 593 (2d Cir. 2003).  *See also Thomas v. Review of Indiana Emp't Sec. Division*, 450 U.S. 707, 716 (1981) (observing that "it is not within the judicial function and judicial competence to inquire" into whether someone "correctly perceived the commands" of his or her own faith).

Because the district court's decision with respect to Smith's Equal Protection claim rested on grounds that are not properly the province of judicial determination — indeed, grounds that Department has now acknowledged are improper — we agree with Smith that vacatur of the district court's grant of summary judgment to the Department on his Equal Protection claim is warranted.  We express no view, however, on whether summary judgment to the Department on Smith's Equal Protection claim ultimately is or is not appropriate.  Rather, we leave it to the district court to consider on remand whether the Department's policy on family event days, setting aside the Department's now avowedly improper justification, was nevertheless rationally related to a legitimate penological concern.

In doing so, we acknowledge that the district court also concluded that Smith failed to demonstrate that he was treated differently than members of a similarly situated group or that the Department's policy on family event days was the result of intentional discrimination.  We are not so certain that where, as here, the state expressly classifies inmates on the basis of religion in the

6

prison context, a plaintiff challenging the state's express classification on Equal Protection grounds must show either (1) that she was treated differently than members of a similarly situated group, *cf. Pyke v. Cuomo*, 258 F.3d 107, 110 (2d Cir. 2001) ("[A] plaintiff who . . . alleges an express racial classification . . . , is not obligated to show a better treated, similarly situated group of individuals of a different race in order to establish a claim of denial of equal protection."); or (2) that the state's express classification was the result of intentional discrimination, *cf. Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 337 (2d Cir. 2000) (explaining that one of the "ways [in which] a plaintiff [can] plead intentional discrimination that violates the Equal Protection Clause" is to "point to a law or policy that 'expressly classifies persons on the basis of race'" (quoting *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999))).  Further, it appears that we have previously considered religious Equal Protection challenges (to both express religious classifications and policies generally applicable to all religious groups) in the prison context without requiring plaintiffs to show that they were treated differently than members of a similarly situated group, or that the state's policy was the result of intentional discrimination.  *See, e.g.*, *Benjamin*, 905 F.2d at 577–79.  We need not decide here whether Smith was required to make such showings.  Even if Smith were so required, the district court's analysis as to whether Smith made the requisite showings was flawed for similar reasons that its analysis of the Department's allegedly legitimate penological interest was flawed.  Namely, the district court's reliance on the Department's inappropriate judgment about the relative importance of family participation to different religious groups clearly colored its analysis of whether Smith had shown that he was treated differently than similarly situated persons.  It also may have led the district court to conclude that Smith failed to show that the Department's policy was the result of intentional discrimination.

7

We therefore leave it to the district court to consider on remand whether Smith was required to make the aforementioned showings and, if so, whether Smith satisfied his burden. *Cf. UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 136 (2d Cir. 2010) (finding it "not clear" whether a new legal theory satisfied a requirement for plaintiffs' federal racketeering claim; "declin[ing] to consider whether summary judgment with respect to the . . . theory is appropriate in the first instance"; vacating the district court's denial of summary judgment; and remanding "for further proceedings, including possible further consideration of summary judgment, with respect to plaintiffs' [new legal] theory").

Accordingly, we **VACATE** the district court's grant of summary judgment to the Department on Smith's RLUIPA claim and Equal Protection claim and **REMAND** the case for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk