14-581
*Barnes v. Furman, et al.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of October, two thousand fifteen.

PRESENT:   ROBERT D. SACK,
           DENNY CHIN,
           CHRISTOPHER F. DRONEY,
                     *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ARRELLO BARNES,
                     *Plaintiff-Appellant,*

                     v.                                        14-581

FURMAN, FEDELE, KERBEIN, ROBERT MURPHY,
CORRECTION OFFICER, HOWARD MATASAR, T.
STANLEY, P. CORCORAN, CHAPPIUS, JR., M.
McGINNIS, A. BARLETT, NAPOLI, JOHN NUTTAIL,
EVERETTE, LITWILDER, BRIAN FISHER, THOMAS
EAGEN,
                     *Defendants-Appellees.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFF-APPELLANT:        Arrello Barnes, *pro se*, Attica, New York.

FOR DEFENDANTS-APPELLEES:        Denise A. Hartman, Martin A. Hotvet, Assistant Solicitors General, *for* Barbara D. Underwood, Solicitor General, *and* Eric T. Schneiderman, Attorney General of the State of New York, Albany, New York.

Appeal from the United States District Court for the Western District of New York (Larimer, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED** in part and **VACATED** in part, and the case is **REMANDED**.

Plaintiff-appellant Arrello Barnes, proceeding *pro se*, appeals from the judgment of the district court entered February 12, 2014 in favor of various prison officials in the New York State Department of Correctional Services ("DOCS") dismissing his complaint alleging claims under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA"). Barnes alleges that prison officials: 1) denied him kosher meals for a three or four-month period in 2004 because he then identified as "Hebrew Israelite," not "Jewish"; and 2) confiscated his religious head covering -- a Tsalot-Kob[1] -- in 2007 because he then identified as "Jewish," not "Rastafarian." Barnes also seeks injunctive and declaratory relief to permit the wearing of Tsalot-Kobs by Hebrew Israelite and Jewish inmates.

---

[1]        A Tsalot-Kob is "a hemispheric head cap that can be made of cloth, knitted or crocheted" and "measures approximately 12" long at its longest point in order to cover all [dread]locks." Appellees' Add. at 6.

By decision and order also filed February 12, 2014, the district court granted defendants' motion for summary judgment and denied Barnes's cross-motion for summary judgment. The district court held that Barnes's kosher meals claim failed as a matter of law and that defendants were entitled to qualified immunity for confiscating Barnes's religious head covering. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

We review *de novo* the district court's grant of summary judgment, with the view that "[s]ummary judgment is appropriate only if the moving party shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003). On summary judgment, the court must consider "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

We also review *de novo* the district court's ruling that defendants are entitled to qualified immunity. *See Lynch v. City of New York*, 737 F.3d 150, 156 (2d Cir. 2013). Qualified immunity shields a government official from liability for civil damages "if his conduct did not violate plaintiff's clearly established rights or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003). The Court "must look to both the clarity of the law establishing the right allegedly violated as well

- 3 -

as whether a reasonable person, acting under the circumstances the[n] confronting a defendant, would have understood that his actions were unlawful." *Ford v. McGinnis*, 352 F.3d 582, 596-97 (2d Cir. 2003) (internal quotation marks omitted).

## A. Denial of Kosher Meals

The district court held that defendants' requirement that Barnes identify as Jewish to receive kosher meals did not substantially burden his religious exercise. But this was not Barnes's claim. Instead, Barnes sought relief with respect to an earlier period of time, the three or four months from April 2004, when he was transferred to Southport Correctional Facility, to early July 2004, when he began receiving kosher meals while still registered as a Hebrew Israelite. His complaint is not that he was later required to register as Jewish, but that he was denied kosher meals for three or four months until the Central Office Review Committee approved his request that inmates identifying as Hebrew Israelite should receive kosher meals. The district court did not consider this claim.

Prisoners have a right to a diet consistent with their religious beliefs. *Ford*, 352 F.3d at 597; *McEachin v. McGuinnis*, 357 F.3d 197, 203-4 (2d Cir. 2004). Here, Barnes alleges that he was denied kosher meals for three or four months, a time period that is not "so trivial that [it is] most properly ignored." *McEachin*, 357 F.3d at 203 n.6.

Defendants do not address whether the facts alleged demonstrate the violation of Barnes's constitutional rights, instead urging us to proceed to the second step of the qualified immunity analysis and arguing that their actions were objectively

reasonable. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."). We elect to do so and we agree that, on the record before us, defendants were entitled to qualified immunity as a matter of law because it was objectively reasonable for them to believe, at the time, that their denial of kosher meals to an inmate who self-identified as a Hebrew Israelite did not violate the inmate's rights.

In April 2004, when Barnes arrived at Southport, the Orientation Manual provided that kosher meals were "available to Jewish inmates." Because Barnes was registered as Hebrew Israelite and not Jewish, he was not given kosher meals. Barnes wrote letters and filed a grievance requesting kosher meals, and on June 23, 2004, the Central Office Review Committee granted the grievance, concluding that it was "appropriate" for inmates self-identifying as Hebrew Israelites to be given Kosher meals. Barnes began receiving kosher meals shortly thereafter.

Hence, while Barnes was first denied kosher meals in accordance with Southport policy because he had not registered as Jewish, the decision was reversed by central DOCS authorities after Barnes complained. While it was clearly established in 2004 that inmates had the right to a diet consistent with their religious beliefs, *see Kahane v. Carlson*, 527 F.2d 492, 495-96 (2d Cir. 1975) (holding orthodox Jewish inmate was entitled to kosher meals); *Bass v. Coughlin*, 976 F.2d 98, 99 (2d Cir. 1992) (per curiam), it

was not unreasonable for Southport officials to deny Barnes kosher meals because he was registered as Hebrew Israelite in accordance with the prison policy limiting kosher meals to Jewish inmates. Nor was it unreasonable for the prison officials to rely on Barnes's registered religious designation in making its initial kosher meal determination.[2] *See Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997) (holding that DOCS may place reasonable limitations on an inmate's right to the free exercise of religion, including a requirement that the inmate register his religious affiliation). Once the Central Office determined that the policy should be changed, the Southport officials granted Barnes kosher meals. Therefore, even assuming Barnes's rights were being violated in 2004, under the circumstances defendants did not act unreasonably.

## B. Confiscation of Religious Head Covering

To prevail on a First Amendment claim, a plaintiff must show that he has a sincerely held religious belief, that it was substantially burdened, and that defendants' conduct was not reasonably related to some legitimate penological interest. *See Holland v. Goord*, 758 F.3d 215, 220-23 (2d Cir. 2014); *Ford*, 352 F.3d at 588-94.[3] Defendants may assert a defense of qualified immunity to such a claim, but they must show that their conduct "does not violate clearly established statutory or constitutional rights of which

---

[2] We note that, at various times, Barnes was registered as Muslim, Hebrew Israelite, Jewish, Rastafarian, Protestant, and Nation of Islam.

[3] We have not decided whether the substantial burden test remains viable in our Circuit following *Employment Division v. Smith*, 494 U.S. 872 (1990), but we need not decide the issue here because defendants have not contested that Barnes satisfies this element, *see Holland*, 758 F.3d at 221.

a reasonable person would have known." *Zahrey v. Coffey*, 221 F.3d 342, 347 (2d Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Defendants confiscated Barnes's head covering because he was registered as "Jewish" and DOCS officials had determined that the appropriate head covering for Jews was a yarmulke, based on advice from their "religious advisors, the New York State Board of Rabbis." Appellees' Br. at 12-13. Barnes contended that a Tsalot-Kob was more appropriate than a yarmulke because it fit over his extensive dreadlocks. At the time, Tsalot-Kobs were "only authorized for members of the Rastafarian faith." Appellees' Add. at 6. Among the five permitted religious head coverings, the Tsalot-Kob was the only religious headwear limited to just one religious faith. *Id.* All others -- yarmulkes, kufis, fezzes, and khimars -- were permitted to be worn by any inmate, regardless of religious registration, so long as they were being worn for religious purposes. *Id.* DOCS has since changed its policy to remove the limitation that Tsalot-Kobs be worn by Rastafarians only. *Id.* at 11 ("In an effort to ensure compliance with RLUIPA, inmates will no longer be required to pick faith specific items for individual worship only.").

Defendants do not dispute that the confiscation of Barnes's Tsalot-Kob religious head covering was unlawful and instead argue that they are entitled to qualified immunity because there is no clearly established law permitting inmates to wear "head coverings of their choice." Appellees' Br. at 31, 37. To determine whether a right was clearly established, we consider "whether the right in question was defined

with reasonable specificity," "whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question," and "whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Dean v. Blumenthal*, 577 F.3d 60, 68 (2d Cir. 2009) (per curiam) (internal quotation marks omitted).

The district court erred in holding that defendants are entitled to qualified immunity as a matter of law. Although we have never held that prison officials are obligated to provide an inmate with "head coverings of their choice," it has nonetheless been well established that prisoners "retain some measure of the constitutional protections afforded by the First Amendment's Free Exercise Clause." *Ford*, 352 F.3d at 588 (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). Prisoners' free exercise claims are necessarily balanced against the interests of prison officials administering the prison system. *Id*. In light of that concern, it has been clearly established that burdens on prisoners' free exercise rights must be justified by a legitimate penological interest. *See id*. at 594-95; *Salahuddin v. Goord*, 467 F.3d 263, 275-76 (2d Cir. 2006) (denying qualified immunity for prison officials not separating Sunni and Shi'ite Ramadan services because "it was clearly established at the time of the alleged violations that prison officials may not substantially burden inmates' rights to religious exercise without some justification").

It was also clearly established before 2007 that prison officials could not rely solely on the opinions of the New York Board of Rabbis in assessing the sincerity of

Barnes's religious belief. *See Ford*, 352 F.3d at 590, 597-98; *Jackson v. Mann*, 196 F.3d 316, 320-21 (2d Cir. 1999) (holding that prison official could not deny inmate kosher meals based on rabbi's determination that inmate was not Jewish under Judaic law); *Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir. 1996) (concluding that prison officials cannot impinge on sincere religious belief simply by showing that "as an objective matter, the plaintiff's belief is not accurate or logical"). Therefore, it was well established by 2007 that the test for whether a prisoner's beliefs are entitled to free exercise protection turns on whether they are "sincerely held," not the ecclesiastical question of the propriety of Jews wearing head coverings other than yarmulkes.

Taken together, our earlier decisions have clearly established that prison officials may not prohibit a sincere religious practice without some legitimate penological interest. The only legitimate penological objectives defendants point to are related to the requirement that inmates register their religious affiliation with prison officials and the Department of Corrections, and that prison officials rely to some extent on that designation. Defendants do not, however, provide any legitimate penological reasons behind prison officials' and chaplains' former adherence to a policy that limited Jewish inmates' head coverings to yarmulkes only. Nor do the defendants offer a legitimate penological reason for deferring to the New York State Board of Rabbis where the sincerity of Barnes's belief was apparently uncontested. As the district court noted, "'there is no legitimate reason for DOCS to afford members of only one religious denomination the opportunity to adhere to a sincerely held religious belief' relative to

- 9 -

grooming or headwear." *Barnes v. Fedele*, No. 07-CV-6197 (W.D.N.Y. Feb. 12, 2014) (quoting *Amaker v. Goord*, No. 06-CV-490A(SR), 2010 WL 2595286, at \*12 (W.D.N.Y. Mar. 25, 2010)).

Even so, there remains the question of whether "'reasonable persons in [defendants'] position would not have understood that their conduct was within the scope of the established prohibition.'" *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998) (quoting *In re State Police Litig.*, 88 F.3d 111, 123 (2d Cir. 1996)). For qualified immunity to apply on this basis, defendants must demonstrate that "no rational jury could fail to conclude" that it was reasonable for them to believe that their conduct did not violate the prisoner's constitutional rights. *Id.* at 74. When officials follow an established prison policy, as defendants did here, their entitlement to qualified immunity depends on "whether a reasonable officer might have believed that the challenged order was lawful in light of legitimate penological interests supporting" the directive. *Holland*, 758 F.3d at 223; *Salahuddin*, 467 F.3d at 276 ("[O]nce a prisoner shows that a prison regulation impinges on a protected right, prison officials must show that the disputed official conduct was motivated by a legitimate penological interest."). While the individual corrections officers who confiscated Barnes's Tsalot-Kob may very well have been acting reasonably when following DOCS policy, a different analysis may apply to those responsible for the policy. On this record, it is not apparent whether there was a legitimate penological reason to limit only Tsalot-Kobs to inmates registered as Rastafarian.

Therefore, we cannot say as a matter of law that it was objectively reasonable for those defendants to believe that denying a Tsalot-Kob to an inmate registered as Jewish was constitutional. Moreover, because defendants have not identified any penological interests supporting the policy, we cannot assess the reasonableness of their actions. *See Salahuddin*, 467 F.3d at 276 (holding that where prison officials did not "point[] to anything in the record to show that they relied on legitimate penological justifications," court could not "manufacture facts out of thin air"). Accordingly, we remand to the district court for further proceedings and development of the record.

**3.    Injunctive and Declaratory Relief**

We affirm the district court's holding that Barnes's requests for injunctive and declaratory relief are moot. While an inmate's transfer "generally moots claims for declaratory and injunctive relief against officials of that facility," but not claims against higher-ranking officials, *Salahuddin*, 467 F.3d at 272, Barnes's claims are nonetheless moot because he has since changed his religious designation to Protestant and no longer has dreadlocks.

We have considered all of Barnes's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** in part, **VACATE** in part, and **REMAND** for proceedings consistent with this decision.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

- 11 -