18-3223-pr
*Barnes v. Fedele, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of May, two thousand twenty.

PRESENT: ROBERT D. SACK,
     RICHARD C. WESLEY,
     DENNY CHIN,
       *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ARRELLO BARNES,
      *Plaintiff-Appellant,*

    -v-                18-3223-pr

LOUIS FEDELE, CORRECTION OFFICER, MICHAEL FURMAN, SERGEANT, ROBERT MURPHY, CORRECTION OFFICER, THERESA STANLEY, CHAPLAIN, PAUL J. CHAPPIUS, JR., DEPUTY SUPERINTENDENT OF SECURITY, ANGELA BARTLETT, DEPUTY SUPERINTENDENT OF PROGRAMS, JOHN NUTTALL, DEPUTY COMMISSIONER OF PROGRAM SERVICES,

*Defendants-Appellees*.[*]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFF-APPELLANT:     ALAN M. MENDELSOHN (Ira M. Feinberg, *on the brief*), Hogan Lovells US LLP, New York, New York.

FOR DEFENDANTS-APPELLEES:     KATE H. NEPVEU, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, and Victor Paladino, Senior Assistant Solicitor General, *on the brief*), *for* Letitia James, Attorney General of the State of New York, Albany, New York.

Appeal from the United States District Court for the Western District of New York (Larimer, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **AFFIRMED** in part and **VACATED** in part, and the action is **REMANDED** for further proceedings consistent with this order.

Plaintiff-appellant Arrello Barnes appeals from an order issued by the district court on October 2, 2018 denying his motion for summary judgment and granting summary judgment in favor of defendants-appellees, a group of officers and employees at Southport Correctional Facility ("Southport") of the New York State

---

[*]     The Clerk of the Court is respectfully directed to amend the official caption to conform to the above.

Department of Correctional and Community Supervisions ("DOCCS"). On appeal,

Barnes argues that the district court erred by granting summary judgment for all

defendants-appellees because they failed to proffer legitimate penological interests

supporting the creation and carrying out of the directive at issue, which led to the

confiscation of Barnes's religious headwear. Moreover, Barnes contends that the district

court erred in denying his cross-motion for summary judgment and asks that we

remand for a determination of damages. We assume the parties' familiarity with the

underlying facts, the procedural history of the case, and the issues on appeal.

## BACKGROUND

In January 2007, Barnes, an inmate at Southport, identified as Jewish and

wore a Tsalot-Kob, a religious headwear, because his yarmulke did not fit over his

dreadlocks. A then-DOCCS prison directive -- Directive 4202 (the "Directive") --

however, permitted only Rastafarians to wear Tsalot-Kobs, and consequently

Southport corrections officers confiscated Barnes's headwear.[1] The confiscated Tsalot-

Kob was turned over to Sergeant Michael Furman, who then delivered it to Chaplain

Theresa Stanley. Stanley ultimately determined that the confiscation was proper

because Jewish inmates at that time were permitted to wear only yarmulkes as

headwear.

---

[1]     The details of the confiscation of Barnes's headwear are disputed. These details, however, are immaterial, as Southport Corrections Officers Louis Fedele and Robert Murphy have acknowledged that they were involved in the confiscation in late January 2007.

Barnes contested the confiscation by utilizing the prison grievance procedures and writing additional letters to other prison and DOCCS officials, which alleged that Deputy Commissioner of Program Services John Nuttall, Deputy Superintendent of Programs Angela Bartlett, and Deputy Superintendent of Security Paul Chappius, Jr. supported the confiscation. The grievances were denied because under the Directive only yarmulkes -- not Tsalot-Kobs -- were proper headwear for Jewish inmates.

Barnes filed the complaint below, naming Bartlett, Chappius, Fedele, Furman, Murphy, Nuttall, and Stanley as defendants (collectively, "Defendants").[2] On February 12, 2014, the district court granted summary judgment in favor of Defendants and dismissed Barnes's complaint. *See Barnes v. Fedele*, No. 07-CV-6197, 2014 WL 11460504, at *1 (W.D.N.Y. Feb. 12, 2014). Although it found that Barnes's free exercise rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") were violated, *id.* at *6, the district court ruled that Defendants were entitled to qualified immunity, *id.* at *7.

Barnes appealed, and we affirmed in part, vacated in part, and remanded via summary order. *See Barnes v. Furman*, 629 F. App'x 52, 57 (2d Cir. 2015). Relevant here, we found that the record needed to be further developed to determine whether Defendants were, indeed, entitled to qualified immunity. *Id.* at 56-57. Specifically, we

---

[2]     Other defendants named in Barnes's complaint have been dismissed.

explained that it was unclear whether there was a legitimate penological interest in "limit[ing] Jewish inmates' head coverings to yarmulkes only." *Id.* at 56. Moreover, we held that even if there was a legitimate penological interest, Defendants would still have to show that they acted in an objectively reasonable manner by following the Directive. *Id.* at 57. Finally, we noted that the analysis for the Defendants who were merely applying the Directive -- that is, Bartlett, Chappius, Fedele, Murphy, and Stanley -- might be different than the analysis for the Defendant who implemented the policy -- that is, Nuttall. *Id.*

On remand, Defendants accompanied their motion for summary judgment with declarations from five of the remaining six Defendants. Although Chappius was not involved in creating the Directive and did not sign off on it, his declaration provided his "understanding" of the penological interest behind the policy: Because religious crowns (*i.e.*, religious head coverings) can be used to hide "[c]ontraband, such as drugs and weapons . . . the limitations of crowns to just those of Rastafarian faith[] was to limit the number of . . . crowns to be searched." J. App'x at 190. The remaining declarations, which were from Bartlett, Fedele, Murphy, and Stanley, all stated that the declarants believed they were following a lawful policy. Nuttall did not submit a declaration, and no one else opined on the penological interest behind the creation of the Directive. Barnes cross-moved for summary judgment, arguing, *inter alia*, that there was no support for the purported penological interest

- 5 -

articulated by Chappius and that none of the Defendants had referenced such a reason in the responses they wrote to his grievances.

On October 2, 2018, the district court once again held that Defendants were entitled to qualified immunity and denied Barnes's cross-motion for summary judgment. *Barnes v. Fedele*, 337 F. Supp. 3d 227, 235 (W.D.N.Y. 2018). The district court noted that Defendants "have now identified penological reasons for the policy underlying [the Directive], insofar as it relates to the restrictions on Tsalot-Kobs." *Id.* at 234. It remarked that "Nuttall could reasonably have believed that such a restriction was constitutionally permissible, given the legitimate penological interest in reducing the risk of smuggling contraband into prisons." *Id.* It also held that the Defendants who merely followed the Directive -- that is, every Defendant other than Nuttall -- were entitled to qualified immunity because there was no reason for them to question the constitutionality of the Directive. *Id.* This appeal followed.

## DISCUSSION

We review a district court's decision to grant summary judgment *de novo*, with the view that "[s]ummary judgment may be granted only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Vincent v. The Money Store*, 736 F.3d 88, 96 (2d Cir. 2013) (internal quotation marks omitted). A party may submit affidavits and declarations in support of its motion for summary judgment, provided the statements included therein are "made on personal

- 6 -

knowledge" and "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4). When reviewing the district court's grant of a motion for summary judgment, we resolve all ambiguities and draw all factual inferences in favor of the non-moving party. *See Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008). Summary judgment must be granted when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Qualified immunity "shields government officials from civil liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Farid v. Ellen*, 593 F.3d 233, 244 (2d Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It is clearly established that although inmates retain their free exercise rights, prisons may abridge those rights "if reasonably related to some legitimate penological interests." *Ford v. McGinnis*, 352 F.3d 582, 594 (2d Cir. 2003). In the Fourth Amendment context, the Supreme Court has held that visual body-cavity inspections can be conducted in detention facilities even when officers do not have probable cause because they promote the "significant and legitimate security interests" of preventing the "[s]muggling of money, drugs, weapons, and other contraband." *Bell v. Wolfish*, 441 U.S. 520, 559-60 (1979); *see also Sec. & Law Enf't Emps., Dist. Council 82, Am. Fed'n of State, Cty. & Mun. Emps., AFL-CIO by Clay v. Carey*, 737 F.2d 187, 204 (2d Cir. 1984) (noting "the

important governmental interest in controlling the flow of contraband into correctional facilities"). If a policy is, indeed, constitutional, state actors who enforce that policy almost always have qualified immunity because carrying out a lawful policy is reasonable. *See Wilson v. Layne*, 526 U.S. 603, 617-18 (1999) (officers acted reasonably in following a department policy and were therefore entitled to qualified immunity even though that policy later turned out to be unconstitutional). If a policy is unconstitutional, those enforcing it may nevertheless be entitled to qualified immunity if "a reasonable [actor] might have believed that the challenged order was lawful in light of legitimate pen[o]logical interests supporting [the policy]." *Holland v. Goord*, 758 F.3d 215, 223 (2d Cir. 2014).

As to the Defendants applying the Directive -- that is, Bartlett, Chappius, Fedele, Murphy, and Stanley -- we conclude that the district court did not err in granting them summary judgment. Regardless of whether the Directive was constitutional, these Defendants acted reasonably in carrying it out because they reasonably believed it was constitutional at the time. Chappius, who at the time was deputy superintendent of security at Southport, explained that he understood that the Directive was aimed at preventing prisoners from concealing contraband in their headwear and limiting the number of searches that corrections officers had to conduct. Preventing the flow of contraband in prison is certainly a legitimate penological interest, *see Wolfish*, 441 U.S. at 559-60; *Carey*, 737 F.2d at 204, and it is logical that

requiring officers to conduct excessive searches would distract them from their other duties. Therefore, Chappius acted reasonably in carrying out what he believed to be a constitutional directive, *see Wilson*, 526 U.S. at 617-18, and he was entitled to summary judgment. Similarly, it was reasonable for Bartlett, Fedele, Murphy, and Stanley -- each of whom attested that they were carrying out what they believed to be a lawful policy -- to enforce the Directive, as carrying out a lawful policy is reasonable. *See id*. Accordingly, the district court did not err in granting summary judgment for these Defendants.

As to Nuttall, however, we conclude that the district court erred in granting him summary judgment. Nuttall relies primarily on *White v. Pauly*, 137 S. Ct. 548, 551 (2017), which he argues changed the law after our last remand and required there to be "clearly established" precedent showing that an official violated the law before he can be stripped of qualified immunity. Appellee's Br. at 13. We disagree. *White* did not change the law; it merely "reiterate[d] the longstanding principle that clearly established law should not be defined at a high level of generality." 137 S. Ct. at 552 (internal quotation marks omitted). Here, the law is and has been specific and clear: Prison officials may only abridge a prisoner's free exercise rights if doing so is "reasonably related to some legitimate penological interests." *Ford*, 352 F.3d 594.

Importantly, Nuttall was the only Defendant involved in creating the Directive, yet he did not provide a declaration explaining the penological purpose

- 9 -

behind its creation. Indeed, he did not provide any declaration. Nevertheless, the district court imputed the penological interest articulated by Chappius onto Nuttall. *See Barnes*, 337 F. Supp. 3d at 234. This was error, as nothing in the record sets forth Nuttall's motivation or thinking. As we indicated when this case was last before us, the analysis for the Defendants who merely applied the Directive is different than the analysis for the Defendant who implemented it. *See Barnes*, 629 F. App'x at 57. It is possible, after all, that Chappius's "understanding" of the policy, J. App'x at 190, was not aligned with Nuttall's reason for signing the Directive. Accordingly, on the record before us, Nuttall is not entitled to summary judgment.[3]

\* \* \*

Accordingly, we **AFFIRM** the order of the district court in part, **VACATE** in part, and **REMAND** the action for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[3] To the extent that Barnes appeals the district court's denial of his cross-motion for summary judgment, we conclude that he did not show that he was entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing . . . that an adverse party cannot produce admissible evidence to support the fact.").