Denny DEJESUS, 10-B-2030, Plaintiff,

v.

Mark L. BRADT, Superintendent of Attica Correctional Facility, and William Hughes, Deputy Superintendent of Attica, Defendants.

6:13-CV-6066 EAW

United States District Court, W.D. New York.

Signed March 31, 2016

Denny DeJesus, Marcy, NY, pro se.

J. Richard Benitez, NYS Attorney General's Office, Rochester, NY, for Defendants.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, United States District Judge

### INTRODUCTION

Plaintiff Denny DeJesus ("Plaintiff"), proceeding *pro se*, is a practicing Muslim inmate currently housed at Marcy Correctional Facility. Plaintiff brings the instant action pursuant the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, and 42 U.S.C. § 1983, alleging defendants Mark L. Bradt and William Hughes ("Defendants") interfered with Plaintiff's ability to properly observe Ramadan in the year 2012, while he was housed at Attica Correctional Facility. (Dkt.8). Specifically, Plaintiff alleges that he was not permitted to fast and shower during Ramadan as required by his faith.

Presently before the Court is Defendants' motion for summary judgment (Dkt.35). For the reasons set forth below, Defendants' motion is granted in part and denied in part.

### PROCEDURAL BACKGROUND

Plaintiff filed the original complaint in this action on February 8, 2013 (Dkt.1), followed by the filing of a first amended complaint on March 22, 2013 (Dkt.6), and a second amended complaint on June 7, 2013 (Dkt.8). The second amended complaint is the operative pleading in this matter. On June 25, 2013, the Court granted Plaintiff leave to proceed *in forma pauperis.*

(Dkt.9). Defendants answered the second amended complaint on January 6, 2014 (Dkt.13), and the case proceeded to discovery before Magistrate Judge Jonathan W. Feldman.

On February 17, 2015, Defendants filed a motion for summary judgment, arguing "the treatment of plaintiff was in furtherance of the facility's interest in the preservation of order and security." (Dkt. 35–1 at 2). The parties continued to engage in discovery (Dkt. 39; Dkt. 43; Dkt. 44; Dkt. 46; Dkt. 47; Dkt. 48; Dkt. 51), and Plaintiff filed a motion to compel further discovery on June 4, 2015. (Dkt.52).

Plaintiff then filed three motions for discovery and extensions of time (Dkt. 57; Dkt. 58; Dkt. 61), which the Court construed as further responses in opposition to Defendants' motion for summary judgment and a request to file a supplemental brief in response to the motion for summary judgment. (Dkt.62). The Court directed Plaintiff to file any papers in opposition to Defendants' motion for summary judgment on or before August 21, 2015, and Defendants to file any reply papers on or before September 4, 2015. (*Id.*).

Plaintiff filed a further response to Defendants' motion on August 26, 2015. (Dkt.64).[1] Defendants did not submit reply papers.

On March 23, 2016, Magistrate Judge Feldman denied Plaintiff's outstanding motion to compel. (Dkt.66).

## *FACTUAL BACKGROUND*

The following facts are undisputed and drawn from the parties' Rule 56 Statements of Fact unless otherwise noted.

Plaintiff is a practicing Muslim and is currently an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). (Dkt. 35–2 at ¶ 1; Dkt. 64 at 1). He resided at Attica Correctional Facility during Ramadan in the year 2012. (Dkt. 35–2 at ¶¶ 1–2; Dkt. 64 at 1). During that year, Ramadan commenced on July 20, 2012, and ended on August 18, 2012. (Dkt. 35–2 at ¶¶ 1–2; Dkt. 35–3 at 14:18–24; Dkt. 64 at 1).

In a memorandum dated July 18, 2012, Defendant Hughes stated, in part, as follows:

> Staff is advised that no containers will be allowed to be carried into the messhalls [sic] and only those food items normally allowed to exit the regular meals will be allowed to be carried out of the messhall [sic] by Ramadan participants, in addition to a Sahur bag.

(Dkt. 35–2 at ¶¶ 3–4; Dkt. 35–3 at 63; Dkt. 64 at 3–4). Prior to this direction by Defendant Hughes, "observant inmates were granted permission to bring plastic

---

1. Although Plaintiff's response was not received and filed in the District Court until August 26, 2015, he is entitled to the benefit of the prisoner mailbox rule. Pursuant to that rule, his papers are deemed filed the day that he signed and turned the papers over to prison officials for mailing. *See Houston v. Lack,* 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (defining the mailbox rule); *Cummings v. Conway,* No. 09–CV–740 (MAT), 2011 WL 2516581, at *2 (W.D.N.Y. June 23, 2011) ("the 'prisoner mailbox rule' ... deems litigation papers mailed by a *pro se* prisoner to the clerk of court as 'filed' the moment the papers are turned over to prison authorities for posting to the court through the prison log system."). Here, Plaintiff's response is signed and dated August 21, 2015. (Dkt. 64 at 36–37). "Absent evidence to the contrary, the Court assumes that [the prisoner] gave his [papers] to prison officials for mailing on the date he signed it." *Torres v. Irvin,* 33 F.Supp.2d 257, 270 (S.D.N.Y.1998). Accordingly, the Court will consider Plaintiff's response as timely filed on August 21, 2015, pursuant to the mailbox rule.

bowls, containers and thermoses to the mess hall for the Ramadan evening meal, and bring food back with them to their cells." (Dkt. 35–2 at ¶ 5; Dkt. 64 at 5).

According to Defendant Hughes, the prior practice created an opportunity for inmates observing Ramadan to collect food at their cells and engage in unauthorized bartering in violation of DOCCS standards for inmate behavior. (Dkt. 35–2 at 6; Dkt. 35–3 at 75). Defendant Hughes claims there was also a concern about hygiene related to the collection of food in cells. (Dkt. 35–2 at 6; Dkt. 35–3 at 75). Defendant Hughes purports he "decided to eliminate the provision allowing inmates to bring plastic bowls, containers and thermoses to the mess hall for Ramadan evening meals" because of the order, safety, and security concerns the provision created. (Dkt. 35–2 at 7; Dkt. 35–3 at 75). Plaintiff argues that no misbehavior reports were issued to Muslim inmates during Ramadan for bartering of food, and asserts that there was no legitimate hygiene concern because the inmates would only bring one meal back to the cell to consume during the night. (Dkt. 64 at 6–7).

Under the new policy, at the breaking of the fast, Muslim inmates were allowed approximately one or one and one half hours to consume two meals, and were sent back to their cells with a Sahur bag. (Dkt. 35–2 at 8; Dkt. 35–3 at 16:4–7). The Sahur bag contained a third meal (a cold meal) to eat in the night hours before starting the fast. (Dkt. 35–3 at 19:2–22). Defendant Hughes claims that "observant inmates are allowed to take back to their cells the same items and portions of food which general population inmates are allowed to take to their cells following a meal." (Dkt. 35–2 at ¶ 9; Dkt. 35–3 at 76). The inmate orientation/guideline manual for Attica Correctional Facility indicates: "[c]ertain rationed items may be carried from the mess hall but all other food must be consumed in the mess hall. Inmates may be permitted to take out a maximum of 2 rationed items." (Dkt. 64–3 at 6).

Plaintiff contends that one hour and thirty minutes was not sufficient time for him and other Muslim inmates to eat the two meal portions at once. (Dkt. 35–3 at 16:13–25–26:1–2; Dkt. 64 at 7). Specifically, Plaintiff argues that the Muslim inmates were using that time to perform other tasks besides just eating, and ultimately had approximately 30 minutes to consume two meals. (Dkt. 55 at 2–3, 8–9). As a result, Plaintiff claims, he was denied the second portion of his double portion because he could not take it back to his cell after implementation of the new policy. (Dkt. 35–3 at 20:7–17; Dkt. 64 at 7–8).

Plaintiff also claims that he was denied a shower on nine or ten occasions during Ramadan. (Dkt. 8 at ¶ 8; Dkt. 35–3 at 20:18–25–21:1–22; Dkt. 64 at 9). Specifically, Plaintiff alleges he was denied showers during the four weekends of Ramadan and one Wednesday. (Dkt. 35–3 at 21:10–13; Dkt. 64 at 9).

### DISCUSSION

### I. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574,

586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*' " *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec.,* 475 U.S. at 586–87, 106 S.Ct. 1348) (emphasis in original). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

■ In addition, "[i]t is well-settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." *Green v. United States,* 260 F.3d 78, 83 (2d Cir. 2001) (internal quotations and citation omitted); *see also Hemphill v. New York,* 380 F.3d 680, 687 (2d Cir.2004) (alteration in original) (internal citation omitted) ("It is well-established that 'when [a] plaintiff proceeds *pro se* ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.' "). Moreover, "a *pro se* litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Satchell v. Dilworth,* 745 F.2d 781, 785 (2d Cir.1984).

## II. Plaintiff's RLUIPA Claims

■ Defendant moves for summary judgment as to Plaintiff's claims for damages based on RLUIPA. (Dkt. 35–1 at 5–6). "Section 3 of RLUIPA provides that '[n]o government shall impose a substantial burden on the religious exercise [of an

institutionalized person],' 42 U.S.C. § 2000cc–1(a), 'in a program or activity that receives Federal financial assistance,' *id.* § 2000cc–1(b)(1), or in a way that affects or would affect 'commerce with foreign nations, among the several States, or with Indian tribes,' *id.* § 2000cc–1(b)(2)." *Washington v. Gonyea,* 731 F.3d 143, 145 (2d Cir.2013) (alterations in original). It is well established that "RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities." *Holland v. Goord,* 758 F.3d 215, 224 (2d Cir.2014).

■ Having reviewed the papers, the Court concludes that dismissal of Plaintiff's RLUIPA claims is warranted. Plaintiff seeks only monetary damages. (Dkt. 8 at 1, 6). Specifically, Plaintiff indicates that the relief he is seeking is "in no event less than 500,000, together with the attorney's fees and costs and such additional relief as this Court may deem just and proper." (Dkt. 1 at 6). RLUIPA does not support a claim for monetary damages against state officials like Defendants. *See Holland,* 758 F.3d at 224. Plaintiff does not seek injunctive relief against Defendants. Indeed, given the fact that Plaintiff is no longer housed at Attica Correctional Facility and his complaints relate to practices at Attica, injunctive relief would not be warranted. *See Thompson v. Carter,* 284 F.3d 411, 415 (2d Cir.2002) ("A prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility."). Under these circumstances, Plaintiff cannot maintain a claim based on RLUIPA, and Defendants' motion for summary judgment is granted with respect to this claim.

## III. First Amendment Claim Pursuant to 42 U.S.C. § 1983

Defendant moves for summary judgment against Plaintiff's First Amendment

claim, arguing that Plaintiff has failed to demonstrate that there is a question of fact with respect to any substantial burden he sustained in practicing Ramadan at Attica in 2012, and that any restrictions were narrowly tailored to legitimate penological interests. (Dkt. 35–1 at 7–8). Alternatively, Defendants contend Plaintiff has failed to demonstrate that Defendant Bradt was personally involved in the alleged constitutional violations. (*Id.* at 8).

 "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir.2003). A claim under the Free Exercise Clause, made actionable against state officials through 42 U.S.C. § 1983, requires that "a plaintiff must show that he has a sincerely held religious belief, that it was substantially burdened,[2] and that defendants' conduct was not reasonably related to some legitimate penological interest." *Barnes v. Furman*, 629 Fed.Appx. 52, 55 (2d Cir.2015). "[T]he burden remains with the prisoner to show that these penological concerns were irrational." *Ford*, 352 F.3d at 595 (quotation omitted).

### A. Sincerely Held Belief

 The Second Circuit Court of Appeals has explained:

Our founding principles require that courts resist the dangerous temptation to try to judge the significance of particular devotional obligations to an observant practitioner of faith. For, it is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of these creeds.

*McEachin v. McGuinnis*, 357 F.3d 197, 201 (2d Cir.2004) (quotation omitted). Rather, a court should consider whether the plaintiff has "demonstrate[d] that the beliefs professed are sincerely held and in the individual's own scheme of things, religious." *Ford*, 352 F.3d at 595 (quotation omitted).

Defendants acknowledge that Plaintiff is "an adherent of Islam." (Dkt. 35–1 at 1). Defendants do not address, and therefore do not contest, that Plaintiff's fasting and shower requirements were part of a sincerely held religious belief.

### 1. Meals

Plaintiff asserts that, "[a]ccording to Islamic law and tradition, if a muslim has fasted during the daylight hours, he is allowed to eat during the entire night until dawn." (Dkt. 55 at 2). Attached to Plaintiff's response papers is an excerpt from the Qur'an, indicating that during Ramadan, an adherent of Islam should eat and drink through the night and fast during the daylight hours. (Dkt. 64–2 at 4). This belief is not contested by Defendants, who attach in support of their motion various

---

**2.** There is arguably an outstanding question in this Circuit as to whether a plaintiff must establish the second element of a substantial burden. "It has not been decided in this Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Holland*, 758 F.3d at 220 (quotation omitted); *see also Barnes v. Furman*, 629 Fed.Appx. 52, 55 n. 3 (2d Cir.2015) ("We have not decided whether the substantial burden test remains viable in our Circuit following *Employment Division v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990).... "). Because the issue has not yet been squarely addressed by the Second Circuit, this Court will continue to apply the substantial burden test. *See Hamilton v. Countant*, No. 13–CV–669(RA), 2016 WL 881126, at *3 (S.D.N.Y. Mar. 1, 2016); *Smith v. Artus*, No. 9:07–CV–1150NAM/ATB, 2015 WL 9413128, at *9 (N.D.N.Y. Dec. 22, 2015).

menus and programs provided by Attica to Muslim inmates during Ramadan. (Dkt. 35–3 at 84–105).

## 2. Showers

Plaintiff further claims "Islamic law and tradition dictate that muslims are required to take showers prior to performing congregational prayer, this includes the period during Jumah services and Ramadan, as a form of purification." (Dkt. 55 at 5). Attached to Plaintiff's June 10, 2015 response papers is an affidavit of Muslim inmate Jerry Garrett, 11–B–3337. (*Id.* at 10–12). Mr. Garrett states under penalty of perjury that showers are required daily during Ramadan "for purification before reciteing [sic] congregational prayers." (*Id.* at 11).

Also attached to Plaintiff's response papers is the May 22, 2012 memorandum of Imam Z. Gasmalla, addressed to the Watch Commander and copied to, *inter alia,* the executive team, captain office, chart office, food service, program sergeant, mess hall sergeant, mess hall officers, SHU, and the hospital. (Dkt. 64–1 at 43–50). This memorandum advises that: "Showers will be provided daily in each block during the 7–3 shift for inmates without programs during this time and on the 3–11 shift for those inmates with programs during the day." (*Id.* at 46). The document further states: "In the past, inmates who are housed at E5–2nd floor have experienced difficulty in getting their shower. Special attention ought to be given to ensure that the working inmates receive their shower upon returning from the Ramadan observance every night." (*Id.*).

In sum, these assertions demonstrate that Plaintiff's belief that he should be permitted to shower daily before prayer during the month of Ramadan is related to a sincere religious belief maintained not only by Plaintiff, but by other observant Muslim inmates housed at Attica.

Therefore, there is no material question of fact with respect to whether Plaintiff has demonstrated that his beliefs with respect to diet and shower requirements were part of his sincerely held religious beliefs.

## B. Substantial Burden

■ "[A] substantial burden exists where the state put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin,* 76 F.3d 468, 477 (2d Cir.1996) (quotation omitted) (alteration in original).

Defendants assert that "the issue of the provision of Ramadan meals has been addressed by the defendants and shown that observant inmates are provided with more than adequate amounts of food during their non-fasting hours, as well as plenty of time in which to consume that food." (Dkt. 35–1 at 7). They further assert that Plaintiff has "failed to demonstrate that [the] memorandum he complains of is a burden to the practice of his religion, let alone a substantial burden." (*Id.* at 7–8). Defendants do not address Plaintiff's allegations concerning the denial of showers on approximately 10 occasions during the month of Ramadan in 2012.

## 1. Meals

■ "Undeniably, the reach of the First Amendment's free exercise clause extends beyond mere attendance at congregate religious services into other aspects of prison life, including, pertinently, that of an inmate's diet and participation in religious meals." *Johnson v. Guiffere,* No. 9:04–CV–57, 2007 WL 3046703, at *4 (N.D.N.Y. Oct. 17, 2007). "[C]ourts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights." *McEachin,* 357 F.3d at 203; *see Ford,* 352

F.3d at 593–94 (Muslim inmate's free exercise rights substantially burdened if prison officials denied request for a meal to celebrate Eid ul-Fitr feast); *Holland*, 758 F.3d at 221–22 (ordering Muslim inmate practicing Ramadan to drink water for a urine sample during fast substantially burdened free exercise rights); *Torres v. Aramark*, No. 14–CV–7498 (KMK), 2015 WL 9077472, at *9–10 (S.D.N.Y. Dec. 16, 2015) (Muslim plaintiff's allegations that he was forced to choose between eating nutritionally adequate meals and complying with his religious fasting requirements during Ramadan stated more than a *de minimis* violation).

Oftentimes, however, an impingement on an inmate's diet is found to constitute no more than a *de minimis* burden on the inmate's ability to practice his or her religion. *See Lewis v. Zon*, 920 F.Supp.2d 379, 385–86 (W.D.N.Y.2013) (plaintiff did not sustain substantial burden where denied kosher meals during transfers between facilities); *Washington v. Afify*, 968 F.Supp.2d 532, 537–38 (W.D.N.Y.2013) (denial of three consecutive Ramadan meals, including two breakfasts and one evening meal, does not violate First Amendment); *Jean–Laurent v. Los*, No. 12–CV–132S (F), 2015 WL 1015383, at *6–7 (W.D.N.Y. Mar. 9, 2015), *appeal denied* (July 6, 2015) ("missing two of the Ramadan meals ... does not constitute a violation of Plaintiff's First Amendment right to the free exercise of his religion"); *Odom v. Dixion*, No. 04–CV–889F, 2008 WL 466255, at *10–12 (W.D.N.Y. Feb. 15, 2008) (failure to provide kosher meals on 7 occasions over several days insufficiently substantial to establish a First Amendment claim); *Thomas v. Picio*, No. 04–CV–3174(KMW)(RLE), 2008 WL 820740, at *6 n. 8 (S.D.N.Y. Mar. 26, 2008) (even assuming inmate plaintiff was denied three or four Kosher meals for one or two consecutive days, "such denial is not a substantial burden" on her free exercise of religion).

 Under the circumstances of the present case, Plaintiff has not established that he sustained more than a *de minimis* burden on his religious beliefs to the extent that he was not permitted to carry a portion of his hot meal back to his cell to consume overnight. As Plaintiff acknowledges, he did "have proper food but the case at hand is not having enough time to consume it...." (Dkt. 64 at 28). Moreover, it is undisputed that Plaintiff was allowed to carry and maintain some food in his cell, including the cold meal in the Sahur bag, but not his hot meal. (Dkt. 35–2 at ¶¶ 3–4; Dkt. 35–3 at 63; Dkt. 64 at 3–4).

According to Defendant Hughes, Muslim inmates were "called out of any program activities at least one hour prior to sunset each day during Ramadan," "were allowed to gather in the mess halls prior to the sunset, to break their fast," and had this time to "break their fasts, engage in prayers, and ... access the commissary." (Dkt. 35–3 at 76). He claims the inmates had "more than one hour to eat." (*Id.*). Additionally, inmates were provided a Sahur bag containing a cold meal to carry to their cells to consume before commencing the daily fast, were allowed to access commissary during the evening meal, and "were allowed to take back to their cells what ever food they purchase[d] at commissary." (*Id.* at 76–77). Acting Deputy Superintendent for Programs of the Attica Correctional Facility, Julie Goodrich, explained in her August 27, 2012 Declaration that Muslim inmates were permitted to "take back to their cells the same items and portions of food which general population inmates [were] allowed to take to their cells following a meal" and could also "take back to their cells what ever food they

purchase[d] at commissary." (*Id.* at 80). Ms. Goodrich further stated that Muslim inmates were provided with ample time to engage in evening prayer and fast-breaking rituals, explaining that on July 12, 2012, the first day of Ramadan, for example, inmates were given almost two hours to eat and pray before being returned to their cells. (*Id.* at 80–81).

Jerome Curry, 98A6098, one of the inmates who drafted an affidavit included in support of Plaintiff's opposition papers (Dkt. 64–2 at 27–29), filed a motion for injunctive relief based on the change in policy from permitting inmates to consume two separate hot meals to providing one hot meal. *See Curry v. Bradt*, No. 13–CV–355A, 2014 WL 7339039, at *1 (W.D.N.Y. Dec. 22, 2014). On December 22, 2014, the court denied Mr. Curry's motion, finding he had failed to "point to any Islamic teaching, law, or rule indicating the requirement of two hot meals per day in observance of Ramadan to allege how Defendants' policy infringed Plaintiff's exercise of Islam." *Id.* at *7.

Similarly, in *Perilla v. Fischer*, No. 13–CV–0398M, 2013 WL 5798557, at *5–6 (W.D.N.Y. Oct. 28, 2013), the court found that the plaintiff's allegations that he was denied, among other things, double portions of meals during Ramadan was "no more than a *de minimus* burden, if at all, on plaintiff's right to practice his Muslim faith during Ramadan." *Id.*

Here, Plaintiff has also failed to point to any Islamic teaching, law, or rule indicating that Plaintiff was required to have a certain amount of time to consume his hot meal, or requiring that he consume a hot meal at his cell during the evening break of his fast (in addition to the cold meal).

This is not a case where the defendants have forced the plaintiff to reduce his caloric intake in providing only two meals during Ramadan, *see Lovelace v. Bassett*, No. 7:07CV00506, 2008 WL 4452638, at *3 (W.D.Va. Sept. 27, 2008); in fact, Plaintiff agrees that the food provided would satisfy the caloric intake requirements if he had the time to eat it all. (Dkt. 64 at 8). Further, Plaintiff has alternative means to obtain approved food to store in his cell overnight in the event he is unable to finish his entire hot meal. *See Powers v. Washington Dep't of Corrs.*, No. C11–5806 RBL/KLS, 2013 WL 1755790, at *17 (W.D.Wash. Mar. 29, 2013), *report & recommendation adopted*, No. C11–5806 RBL/KLS, 2013 WL 1755787 (W.D.Wash. Apr. 24, 2013) ("Mr. Powers has failed to raise a genuine issue of material fact as to his claim that the Ramadan 2010 policies and meals burdened the practice of his religion. As noted above, the evidence does not support Mr. Powers's characterization of the amount of calories in the Ramadan meals or the effect of those calories. Moreover, if he was still hungry during the fast, he had access to additional food.").

For these reasons, Plaintiff has failed to demonstrate that his religious beliefs were substantially burdened when Defendants changed the policy to prohibit Muslim inmates from storing portions of their hot meals in personal containers in their cells.

## 2. Showers

Plaintiff claims his religious beliefs were substantially burdened because he was not permitted to take a shower and engage in ritualistic cleansing before congregational or group prayer on ten different occasions during Ramadan 2012. (Dkt. 64 at 28). There is case law referencing the Muslim practice of showering before prayer services during Ramadan. *See Gibb v. Crain*, No. 6:04cv81, 2008 WL 4691049, at *13–14 (E.D.Tex. Oct. 21, 2008) (discussing grooming policy that permitted Muslim inmates to shower before prayer services during

Ramadan); *Murrell v. Bukowski,* No. 08–2044, 2011 WL 884736, at \*4 (C.D.Ill. Mar. 11, 2011) (noting the plaintiff was "permitted to read his Qur'an, pray in his cell throughout the day, pray over meals, use a 'prayer towel' provided by the JCDC, shower regularly (to stay clean so as not to pray with any impurities), and fast during the holy month of Ramadan").

There are also cases, at least from other Circuits, suggesting that denying a Muslim inmate the ability to shower daily during Ramadan does not rise to the level of a substantial burden. *See Blackwell v. Green,* No. RDB–13–372, 2013 WL 5883396, at \*2 (D.Md. Oct. 29, 2013) ("Further, the limitation on showers on Fridays does not constitute a substantial burden on Plaintiff's exercise of his religious practices as the shower taken on Thursday is sufficient, under Islamic law, to satisfy the requirement of ritual cleansing before Friday services. Moreover, Plaintiff has access to running water in his cell with which he may cleanse himself prior to the Friday services. The limitations placed on showering on Fridays does not impair Plaintiff's ability to comply with the religious requirements of ritual cleansing."); *Crump v. Best,* No. 10–13787, 2012 WL 1056806, at \*8 n. 3 (E.D.Mich. Mar. 5, 2012) *report & recommendation adopted,* No. 10–CV–13787, 2012 WL 1021703 (E.D.Mich. Mar. 27, 2012), *aff'd in part, appeal dismissed in part* (Jan. 8, 2014) ("Plaintiff also complains that during Ramadan he was not allowed to shower during standard meal times when other prisoners were in the dining hall. At best, that describes a minor inconvenience to Plaintiff which clearly does not constitute a 'substantial burden' on his overall ability to observe Ramadan.").

Notwithstanding the foregoing, the Court will not make a determination that, as a matter of law, Plaintiff was not substantially burdened by the deprivation of approximately ten showers before prayer services during the month of Ramadan in 2012, particularly in light of the fact that Defendants have not opposed Plaintiff's assertions in this respect.

Plaintiff claims that on approximately nine or ten occasions, he was not permitted by corrections officers to take Ramadan showers despite the fact that a memorandum was issued by Imam Zakira Gasmalla on May 22, 2012, detailing the requirement that Muslims attending Ramadan and Jum'ah should be permitted daily showers prior to going to the mess hall. (Dkt. 8 at ¶ 8; Dkt. 35–3 at 21:10–13). At his deposition, Plaintiff further explained that showers were not allowed indoors on the weekends at any time and were only available outdoors during recreational time. (Dkt. 35–3 at 25:7–24). Because Plaintiff was participating in Ramadan, he could not go outdoors for recreational time on the weekends, and therefore could not shower. (*Id.* at 24:10–25–25:1–11). Plaintiff contends he should have been permitted to shower indoors on the weekends during Ramadan. (*Id.* at 35:17–25–36:1–8). Accordingly, Defendants have failed to establish that there are no genuine issues of material fact as to whether Plaintiff's religious beliefs were substantially burdened as a result of the alleged denial of showers. Indeed, as noted above, Defendants have not even asserted an argument in this regard.

## C. Legitimate Penological Interests

"Under the First Amendment ... a generally applicable policy will not be held to violate a plaintiff's right to free exercise of religion if that policy is reasonably related to legitimate penological interests." *Redd v. Wright,* 597 F.3d 532, 536 (2d Cir.2010) (quotation omitted).

"In determining whether the burden imposed by the defendants is reasonable or irrational, a court evaluates four factors: (1) whether the action had a valid, rational connection to a legitimate governmental objective; (2) whether the prisoner has an alternative means of exercising the burdened right; (3) the impact on guards, inmates, and prison resources of accommodating the right; and (4) the existence of alternative means of facilitating the plaintiff's exercise of the right that have only a *de minimis* adverse effect on valid penological interests." *Lewis*, 920 F.Supp.2d at 384 (quotation omitted).

### 1. Meals

Here, even if Plaintiff could establish for purposes of this summary judgment motion that the inability to carry and maintain a hot meal in his cell to consume during the evening break of his fast constituted more than a *de minimis* burden on his religious beliefs, summary judgment is still warranted in favor of Defendants on this issue because there are no genuine issues of material fact that the restrictions imposed were reasonably related to legitimate penological interests.

Defendants assert that the "arrangements for the 2012 Ramadan celebration at Attica were reasonable, and narrowly tailored to address legitimate security concerns," insofar as "[i]t is the opinion of the Deputy Superintendent for Security that allowing large amounts of food to be taken back to an inmate's cell creates threats to security and hygiene." (Dkt. 35–1 at 7–8).

According to Defendant Hughes, the former provision of permitting Muslim inmates to take rationed food from the mess hall to their cells had never occurred at any of the facilities at which he was formerly employed. (Dkt. 35–3 at 75). Defendant Hughes indicates that he informally investigated how this provision was carried out in practice and learned that often Muslim inmates would return to their cells with "more food than one man could possibly consume in a night." (*Id.*). Defendant Hughes concluded that based on his experience and training, "this information raised serious concerns about the security risks inherent in such activity," particularly because Corrections Officers indicated that much of the food brought back by Muslim inmates was given or bartered away. (*Id.*). He further stated that "[b]artering or selling among inmates can also lead to extortion and bribery, as well as theft, all of which undermine the safety and good order of a facility." (*Id.*). Additionally, Defendant Hughes noted that permitting large amounts of unpackaged food to return to inmate cells could lead to hygienic problems with "odor and vermin." (*Id.*). Based on this information, Defendant Hughes decided to eliminate the provision permitting inmates to bring plastic bowls, containers, and thermoses to the mess hall for Ramadan evening meals. (*Id.*).

Defendants have satisfied their "relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct." *Salahuddin v. Goord*, 467 F.3d 263, 275 (2d Cir.2006). Defendants have articulated a valid, rational connection to facility safety and security by eliminating the ability of inmates to return to their cells with excess food in personal containers. (Dkt. 35–3 at 75). Further, the inmates have alternative means of exercising their burdened right, insofar as they are able to take the same two items of food back to their cells as any other inmate, and are also permitted to return to their cells with any food purchased at commissary. (*Id.* at 76–77, 80). These alternative means of exercising the right are available to all other inmates at the Attica facility, and do not create an

adverse effect on the legitimate penological interests.

In an attempt to show that the penological interest cited by Defendants is not rational, Plaintiff asserts that he has never been issued a misbehavior report during the month of Ramadan for bartering or mishandling food, and claims that he has "personally never heard of any muslim being given a Misbehavior report during the month of Ramadan at attica correctional facility for such during the 2011 or 2012 Ramadan or years prior of my incarceration at attica and to my belief and knowledge no muslim has ever be[en] written a misbehavior report during the month of Ramadan of any year back to 1970." (Dkt. 55 at 5).

Attached to Plaintiff's response papers are the affidavits of Harold Hill, 09B3044 (Dkt. 64-2 at 20), Anthony Bottom, 77A4283 (*id.* at 24–25), and Jerome Curry, 98A6098 (*id.* at 27–29). These Muslim inmates each state under penalty of perjury that they were present for Ramadan at Attica in 2012, were not written a misbehavior report for bartering or mishandling food during Ramadan, but were denied one of their three daily meals due to lack of time to consume their two evening meals at once and the inability to return to their cells with one meal in a personal bowl. (*Id.* at 20, 24–25, 27–29).

Even accepting Plaintiff's argument that no misbehavior report was ever issued to a Muslim inmate during Ramadan for bartering or mishandling of food (and the Court makes no finding in that regard), Defendants would retain a legitimate interest in controlling the potential for unhygienic cell conditions caused by storing certain foods in individual cells. (Dkt. 35-3 at 75). Moreover, the alleged lack of any prior inmate misbehavior reports does not raise an issue of fact concerning the rationality of Defendants' cited security concerns. Security concerns can be legitimate and rational even without formal disciplinary proceedings against inmates. In sum, Plaintiff has not met his burden of demonstrating a genuine issue of material fact as to whether Defendants' legitimate penological interest concerning the change in policy for personal bowls and storing food overnight in cells is irrational.

Defendants' motion for summary judgment as to Plaintiff's claims concerning diet restrictions only is granted.

## 2. Showers

Defendants do not discuss, and therefore do not proffer, any legitimate penological interest for denying Plaintiff the ability to shower on approximately 10 occasions during the month of Ramadan in July 2012.

The event proposal reviewed and approved by Defendants Hughes and Bradt states that Muslim inmates should be provided daily showers. (Dkt. 35-3 at 93–94; Dkt. 64-1 at 61–62). When asked if Plaintiff was supposed to receive a Ramadan shower "everyday [sic] during the whole month of Ramadan in 2012," Defendant Hughes responded that "[t]o the best of [his] recollection, Muslim inmates received showers whenever possible." (Dkt. 64-3 at 94). When Defendant Bradt was presented with the same question, he responded that Muslim inmates "received showers if security was available to provide them." (*Id.* at 86). As a result, it seems that the typical practice would be to permit Muslim inmates to shower daily during Ramadan.

█ Because Plaintiff has raised an issue of material fact as to whether he was denied daily showers on *nine or ten* occasions during Ramadan in 2012 and whether that was a substantial burden on the practice of his faith, and because Defendants have failed to address this argument or proffer any legitimate penological inter-

est for the denial, Defendants are denied summary judgment as to these claims.

### E. Personal Involvement

Alternatively, Defendants argue that summary judgment should be granted in favor of Defendant Bradt, insofar as they claim that Plaintiff's grievance to Defendant Bradt was filed after the offending conduct and because it was too late for Defendant Bradt to intervene, he cannot be found personally involved with the alleged denial of meals. (Dkt. 35–1 at 8–9).

In order to bring a § 1983 claim against a prison official, "a plaintiff must allege that individual's personal involvement...." *Ippolito v. Goord,* No. 05–CV–6683 (MAT), 2012 WL 4210125, at *7 (W.D.N.Y. Sept. 19, 2012). Furthermore, "supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*." *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003). Supervisory officials such as Defendants Bradt or Hughes may be found personally involved in a constitutional violation in the following ways: "(1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." *Ippolito,* 2012 WL 4210125, at *7 (internal quotations and citation omitted).

Plaintiff claims he sent a letter to Defendant Bradt on July 24, 2012, "to inform him of the violations that were taking place and not [receiving] showers before writing a grievance on the issues but [he] never received a response...." (Dkt. 55 at 6, 13). "[I]t is well-established that a supervisor's failure to respond to a letter of complaint does not provide a sufficient basis to find that the defendant was personally involved in the deprivation alleged." *Rodriguez v. Rock,* No. 9:13–CV–01106 DNH, 2015 WL 5147045, at *6 (N.D.N.Y. Sept. 1.2015) (collecting cases).

Plaintiff also filed a grievance related to the alleged denial of showers on August 27, 2012, and Defendant Bradt denied this grievance on September 12, 2012. (Dkt. 64–3 at 27). With respect to the alleged denial of showers, Defendant Bradt stated: "The grievant is further advised that showers are provided for Jumah services only." (*Id.* at 27).

Plaintiff also argues that Defendant Bradt was part of developing and approving the policies and practices related to the ability of inmates to observe Ramadan at Attica. (Dkt. 64 at 31–32).

Defendant focuses its argument about the lack of supervisory liability on the absence of involvement of Defendant Bradt with respect to the alleged constitutional deprivation of Plaintiff's meals. As discussed previously, the Court finds that summary judgment should be granted in favor of Defendants on the underlying merits of that claim, so correspondingly, there is no supervisory liability. However, Defendants fail to address the merit with respect to the supervisory claims related to the shower deprivations (and indeed wholly fail to even address Plaintiff's claim in that regard). Accordingly, while the Court questions whether a claim may be maintained against either one of the supervisory defendants based upon the claims related to the showers, particularly since it appears that the policy in place should have allowed Plaintiff access to the showers required by his religion, it is not this

Court's job to raise arguments that Defendants have failed to address.

Defendants' motion for summary judgment as to the claims against Defendant Bradt on the grounds of personal involvement is denied.

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment (Dkt.35) is granted in part and denied in part.

SO ORDERED.